H. T. KIMBROUGH, APPELLANT, v. NATIONAL PROTECTIVE INSURANCE ASSOCIATION, RESPONDENT.—35 S. W. (2d) 654.

Kansas City Court of Appeals.   December 1, 1930.

*Charles C. Madison* for appellant.

*P. H. Jackson* for respondent.

BOYER, C.—We find the statement made by appellant is a fair presentation and adopt it as follows:

"This suit is based upon an accident insurance policy providing for an indemnity of $1,200 for the loss of the sight of both eyes. A verdict and judgment in favor or plaintiff for $1,209.95 was entered. The motion for new trial filed by defendant was sustained upon the ground that the court erred in refusing an instruction in the nature of a demurrer to the evidence. Plaintiff has prosecuted this appeal from the order setting aside the judgment and granting a new trial.

"The insuring clause in policy upon which recovery is sought, contains the following provisions:

"'Does hereby insure H. T. Kimbrough (herein called insured) for a term of *one year,* from noon, standard time, at the place of insured's residence, of the day the official premium receipt for this policy is dated, against death, dismemberment, loss of sight, or disability resulting solely from bodily injuries effected, directly and independently of all other causes, through *external violent and accidental means,* subject, however, to all the terms, provisions and limitations herein contained.'

"There follows under a portion of the policy designated as 'Part I' a recital that the company will pay for loss of the sight of both eyes, $1,200. There is also enumerated in such section numerous other classes of injuries and indemnities therefor.

"Under a separate heading 'Part II' appears the following:

"'Sustained:

"'A. By the wrecking or disablement of any privately owned automobile of the pleasure car type in which the injured is riding or driving, or is accidentally thrown from within such wrecked or disabled automobile.'

"Then follow other alphabetically designated clauses which have no bearing upon the matter involved in this case.

"The answer of defendant in addition to the denial of certain facts set forth in the petition specifically pleads 'Clause A,' above quoted, as a limitation of the insuring clause of the policy, and denies that the injuries came within the purview of the language of such limitation.

"The evidence of plaintiff was to the effect that he paid the premium and obtained the policy in question on or about November 25, 1927; that the accident in question occurred on March 9, 1928. The evidence further shows that the plaintiff was at the time of the accident about sixty-one years of age, a resident of Ray County, and that the accident occurred about seven miles northeast of the town of Hardin, in Ray County, Missouri. The plaintiff's description of the accident is that he left his farm, where he had been making or repairing some fence, seven or eight miles northeast of Hardin, in his Buick touring car, drove out onto the highway, and proceeded

toward home in a westerly direction. He fixed the time at about 5:15 or 5:30 in the afternoon, and states that in undertaking to pull around some mules on one side of the road the left front fender of his car collided with the hub of the hind wheel of a wagon which was being driven in the road, and which on account of facing the sun he was unable to avoid. As a result of this collision he was thrown with considerable force, his head striking some portion of the interior of his car. He proceeded to his home, where his wife discovered a black and blue spot on his forehead.

"Although it was the purpose of plaintiff to return next day to finish the work he was doing on his farm, he was unable to do so on account of the condition of his eyes, which were later examined by Dr. Grimes of Hardin, and still later he was taken to the Bell-Memorial Hospital at Kansas City for treatment and examination by Dr. Major. The evidence of the plaintiff and others, including Dr. Major and Dr. Grimes, is that he became totally blind in both eyes. Plaintiff's description of the nature of the accident, which is the only evidence upon that point, as developed not only upon direct examination but upon cross-examination by defendant's counsel, is that the fender of plaintiff's car came into contact with the left hub of the wagon, bending the fender down from four to six inches, but not killing the engine, and that he was able to proceed to his home where he repaired the damage, by putting his foot against the wheel, pulling the fender up as best he could, and by taking a sledge hammer and battering it back into place.

"In his deposition, Dr. Major stated that the blindness was caused by a detachment of the retina which could be caused by a blow such as plaintiff received, and on hypothetical question, gave it as his opinion that it was caused by such a blow. The evidence showed that this was the only blow received by plaintiff within such length of time as could have had any bearing upon the result. Dr. Major also testified as to certain physical conditions of plaintiff that might have broken down his resistance to an injury such as the one described.

"Dr Grimes also described plaintiff's condition, attributed the blindness to the detachment of the retina, and said it could have been caused by a blow such as plaintiff received. Dr. Grimes and Dr. Major differed as to whether or not the plaintiff had cataracts, Dr. Grimes stating that none existed and that Dr. Major in his report had not stated such condition. Other corroborative evidence was given as to condition of plaintiff's eyes up to immediately before the accident, and that he was unable thereafter to get about or make use of his eyes.

"The defendant offered no evidence, and upon the instructions of the court, the jury returned a verdict for $1,209.95."

We may add to the foregoing that the evidence also shows that plaintiff met a team and a loaded wagon; that in attempting to pass,

the left front wheel of the automobile struck the left hub of the wagon; that the fender was bent, and plaintiff did not know of any other damage; there was a jar; the car had glanced off; it glanced the front end of the car around until it passed the hub; plaintiff was thrown and the side of his head was "hit up to the side of the top where there was an arm or shoulder." Plaintiff was not thrown out of the car and ran it on home.

The petition is based upon the policy and upon facts shown in evidence. The jury was authorized to find for plaintiff upon a finding that the car was "disabled" and upon a finding of other requisite facts. No question arises upon the pleadings or the propriety of instructions if plaintiff was entitled to submit his case.

Respondent, in brief and argument, insists that appellant failed to make a *prima-facie* case in that there was lack of proof showing causal connection between the injury and the loss of sight, and that the record shows plaintiff was afflicted with diseases that could cause his blindness. It is obvious from the statement of facts that there was sufficient substantial evidence upon which the jury could predicate its verdict that plaintiff sustained loss of sight on account of the injury received.

The case on appeal is briefed and argued by appellant, and in the main by respondent, on the sole question of the proper construction to be given the contract of insurance. The controversy centers upon the meaning and effect of paragraph A in Part II. It is shown in the statement. Respondent contends that it is a limitation upon the insuring clause and that plaintiff cannot recover unless his case be brought strictly within the literal meaning of said paragraph, and upon a showing that plaintiff was injured "by the wrecking or disablement" of an automobile; that the evidence shows the automobile was not wrecked or disabled; and that the meaning of the policy is plain and subject to only one construction. Appellant contends that the purpose for which the policy was issued was to insure plaintiff against bodily injuries and not against damage to his automobile; that the contract must be given a reasonable construction; that whether or not paragraph A amounts to a limitation of the insuring clause, it involves nothing but a question of fact for the jury under proper instructions; and further, that the language of the policy indicates, and that it was calculated and intended to lead the insured to believe, that he would be protected in the event of an accident resulting from a collision of a motor car driven by him; and contends for that construction which is applied in all cases where there is a question of doubt as to the true intendment of the policy or where it is susceptible of two or more interpretations; that the words "wrecking," "disablement," and "thrown from within" manifest a purpose to cover all injuries growing out of collisions, and that the degree of disablement is unimportant; and also that the

word "disablement" in one sense means damage to, or to detract from the value of, and that it is not for the court to say as a matter of law that the jury could not find that the motor car was disabled.

As indicated above, from our view of the evidence and the case presented on appeal, the sole issue depends upon the proper interpretation, construction, meaning, and effect to be given the so-called limiting clause. It is evident that the trial court held that the demurrer should have been sustained because the evidence did not bring the case within the scope of the limiting clause.

In the beginning it must be determined whether there is anything in the contract which is subject to judicial construction. If all of its terms and conditions are expressed in language that is clear, explicit, unequivocal, and capable of having but one reasonable meaning to the ordinary mind, then there is no room for construction. On the other hand, if a doubt arises as to the meaning, effect, and application of any of its provisions, under a given state of facts and circumstances, then an examination will be made with a view of ascertaining whether the language used in the contract is susceptible of more than one reasonable interpretation, and whether or not the contract may reasonably be construed to apply, and to give effect to the insuring clause, under the facts and circumstances named.

We are of opinion that paragraph A is subject to construction; that it will permit of more than one reasonable interpretation; that the exact purport, meaning, and intendment is not clearly and unequivocally expressed; that it is ambiguous and subject to that construction which, if reasonably possible, will give effect to the insuring clause. If this limiting paragraph be given the rigid and strict meaning claimed for it by respondent there could be no recovery for injury arising out of any automobile collision unless the car was in fact a wreck, or disabled below ability for use. Respondent contends, in effect, that one or the other of these things must have happened to the car before plaintiff can have any claim. Such contention cannot prevail. It is unreasonable and unjust to allow such a strictly limited meaning to this provision of the policy. There was a collision and damage to the car by reason of which plaintiff was injured.

Examining the words of this clause as they are written and giving them the meaning that would be attributed to them by one of ordinary understanding, we may reasonably say that the insured would be led to believe that he purchased indemnity against injury arising from an automobile collision while riding in a car, or during the time of an automobile collision, or when he was accidentally thrown from within the car at such time. The clause begins with the words "by the wrecking or disablement of any privately owned automobile." The initial word "by" is not used essentially in the restricted sense of a preposition, but it evidently carries with it

the adverbial significance of means and time and is used here in the sense of "thru and during." This must be true to make sense of the last clause of the sentence which contains the words, "or is accidentally thrown from within such wrecked or disabled automobile." No one would anticipate being thrown from within an automobile *after* it is wrecked or disabled, but would naturally anticipate that he might be so thrown thru the means, or during the time, of any occurrence, such as a collision in which the car is wrecked or disabled.

We think also that the words "by the wrecking or disablement of" may have reference not only to the physical or mechanical condition of a car after an accident has occurred, but that it may and does also have reference to that occurrence or casualty which causes disablement or damage to the automobile. Giving the clause a broad and inclusive significance instead of a narrow and restricted one, we may say that the insured understood from the whole contract that protection would be afforded him under the circumstances shown in evidence and that the insurer had reason to believe that the contract was so understood by the insured.

If the company desired to limit its liability in automobile collision cases to instances where the automobile is in fact physically wrecked or mechanically disabled so it would not run, it should have said so by the use of unequivocal words and in a way that would clearly express the true intent and purpose. In offering such a policy as the one in suit, we are of opinion that the company had reason to believe that the insured would understand that he was buying protection against injury arising out of an automobile collision, such as plaintiff was in, regardless of the extent of the wrecking or disablement of the car.

The words "wrecking or disablement" should not be given the restricted meaning claimed for them. Their meaning is varied and changeable, depending somewhat upon the connection in which they are used. Read in connection with the context, the word "disablement" may be accorded the meaning either of disability or damage. "Disability is not synonymous with permanent injury." [Bates v. Friedman, 7 S. W. (2d) 452, 455.] It is defined in one sense as a crippled condition; and "disable" is defined in one sense to mean to detract from the value of, and to impair. Impair means to damage. [Webster.] The word "disablement" implies the meaning of injury or damage to a person or instrumentality, as well as impairment of ability for use. Under the meaning thus attributed to these words it was competent for the jury to determine whether the automobile was disabled. The car was impaired and damaged. To that extent at least, and in that sense, it was disabled.

In the present case there is at least a doubt arising upon the face of the policy as to whether it was intended to apply to the state of facts and circumstances shown in evidence. In such a situation

if the policy can be given any reasonable construction that would cover the loss, such construction will be allowed in behalf of the insured. The following canons have become fixtures of insurance law in this State: "(1) The policy is to be construed liberally in favor of the assured and against the insurer. (2) Where the policy is susceptible of two interpretations equally reasonable, that construction most favorable to the assured must be adopted, even though in fact intended otherwise by the insurer. (3) The law does not favor forfeitures, and contracts of insurance must be so construed, if possible, as not to defeat the claim to indemnity. (4) The provisions in a policy, limiting or avoiding liability, must be construed most strongly against the insurer." [State ex rel. Ins. Co. v. Allen, 305 Mo. 607, 614, 267 S. W. 379; Howell v. Ins. Co., 215 Mo. App. 692, 253 S. W. 411; Rosen Brokerage Co. v. London Assurance Corp., 264 S. W. 433; LaForce v. Ins. Co., 43 Mo. App. 518; Schmohl v. Travelers' Ins. Co., 189 S. W. 597, 600, 197 S. W. 60, 63; Mathews v. Modern Woodmen, 236 Mo. 326, 343, 139 S. W. 151, 156; Goerss v. Indemnity Co., 3 S. W. (2d) 272.]

The reasons underlying the rules of construction in cases of this character are fully set forth in the above authorities. An insurance company must be a good sportsman and never deign to hunt or fish with snare or net. It is denied the advantage of blinds and decoys. It will not be permitted to play hide-and-seek with its liability and the policy holder by concealing itself behind equivocal terms, expressions, conditions, provisions, limitations, et cetera, to the bewilderment and loss of the insured. If the company, in the preparation of its policy, chooses the use of words that may have a double meaning and deceive the unwary, and in the construction of them seeks to turn and twist the meaning, intent, and purpose to its advantage, then such efforts will be met, if necessary, by an exhibition of all the feats known to the judicial turnverein in order to find a justifiable construction that will favor the insured. In this effort the law holds high the shibboleth of fair play. It seeks not the making of a new contract for the parties, but a fair fulfillment of the one made, thru a reasonable construction of its true character and purpose, "and in a sense which insured had reason to suppose it was understood." [Continental Casualty Co. v. Linn (Ky.), 10 S. W. (2d) 1079.] The company has no just complaint because it knew the existing law and the rules of construction at the time the policy was drawn.

In adopting such rules of construction the purpose is not punitive, nor to deprive an insurance company of contractual rights, nor to impair the obligation of a contract clearly and plainly expressed, nor to do any other unwarranted violence. The plain and laudable purpose is the pursuit of justice. All ambiguity, doubtful language, conflicting provisions and expressions, contained in a

policy will be construed in such manner, if in reason possible, as to harmonize the policy, prevent forfeiture, give life to the indemnity provision, and application to all subjects and circumstances within the reasonable intendment of the parties and found reasonably within the circumference of the policy.

We are of opinion and hold that the limiting clause in question is ambiguous; that it is subject to different interpretations; that it can in reason be construed to include the character of injury sustained by plaintiff; that the policy affords indemnity under the circumstances of this case; and that the jury could properly find from the facts in evidence that the automobile was disabled. In so holding, we do not impinge on any rule of law announced by any appellate court of this State which has been called to our attention or of which we are aware.

Respondent claims that the same clause of the policy was before the St. Louis Court of Appeals for construction in the case of Ransford v. National Protective Insurance Association, 16 S. W. (2d) 663. Upon an examination we find an able opinion by Judge HAID, disposing of an entirely different question and in no way involving the construction of paragraph A of the policy. In that case the claim was for death caused by a gunshot wound. The court observed:

"Part II of the policy sets forth eleven sections covering the character of accidents which are covered by the policy, none of which cover an injury from a gunshot wound."

The Ransford case is an aid, and is applicable here, in so far as it announces the rules governing the construction of insurance contracts.

It is our conclusion that plaintiff is entitled to the verdict which the jury awarded him; that the learned trial court erred in setting it aside and in holding that the demurrer to the evidence should have been sustained. The judgment of the court should be reversed and the cause remanded with direction to reinstate the verdict and to enter judgment for plaintiff. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment of the court is reversed and the cause remanded with direction to reinstate the verdict and to enter judgment for plaintiff. All concur except *Trimble, P. J.,* absent.