ELMER E. EVANS, RESPONDENT, v. GREAT NORTHERN LIFE INSURANCE Co., APPELLANT.—167 S. W. (2d) 118.

Kansas City Court of Appeals. November 2, 1942.

318

*Thomas J. Layson* for respondent.

320

*P. H. Jackson, R. H. Moore* and *Harry A. Hall* for appellant.

BOYER, C.—This case has been reheard. After the first hearing an opinion prepared by Commissioner Sperry was adopted. There were four points for decision, viz., claimed error of the court in overruling the demurrer; in giving plaintiff's Instruction No. 1; in the admission of evidence; and in giving plaintiff's Instruction No. 2, authorizing the allowance of penalty and attorney's fee. No new points were presented on rehearing. After re-examination of the record and consideration of the briefs and argument it is found that the former opinion correctly disposes of the first three points, and it is now quoted and adopted to that extent as follows:

"Plaintiff, Elmer E. Evans, was the beneficiary in an accident insurance policy issued by defendant, Great Northern Life Insurance Company, a Corporation, whereby defendant undertook to insure plaintiff's wife, Anna Etta Evans, against accidental loss of life. Insured was accidentally killed by being thrown from an automobile in which she was riding and plaintiff obtained judgment in the total sum of $1000 on the policy, $115.33 interest, and $200 attorney's fees. Defendant appealed.

"The policy sued on was in evidence and provided for payment of indemnity for loss of life:

" 'Sustained through external, violent and accidental means . . ., by wrecking or disablement of any private . . . automobile . . . in which the Insured is riding or driving, or by being accidentally thrown from such wrecked or disabled vehicle or automobile.'

"There was evidence tending to prove that in 1937, eight or nine months previous to the accident in question, the right front door of plaintiff's car which opens toward the front, while open, was caught when the automobile backed down the street, breaking the door check and causing a small crack or space between the door and the frame when the door was closed; that the door closed easily afterward and gave no trouble about coming open; that the hinges of the door were bent and sprung; that the door was pushed forward; and there was expert evidence tending to prove that such a condition would cause a shortening of the overlap of the catch where the latch comes into said catch. Plaintiff had the door check repaired, but made no other repairs.

"At the time of the accident sued on, August 23, 1938, plaintiff was driving his car and his wife was riding in the front seat with him, she being seated facing plaintiff, with her arms folded, when plaintiff started to pass an automobile going in the same direction. Plaintiff decided that he would not have time to pass that car because of an approaching automobile coming in the opposite direction, and put on his brakes suddenly and turned the car to the left. The insured was thrown against the right front door which opened, and she fell from the car. She struck her head and received injuries from which she died two days later.

"The evidence further shows that at the time of the accident there was no collision or any contact of plaintiff's automobile with any other automobile or object, and that the right front door, on no other occasion, ever came open, either prior to the accident or following the accident, although the automobile was used continuously from that date until it was wrecked in a subsequent accident while driven by the plaintiff.

"Plaintiff gave evidence to the effect that, before the occurrence of the fatal accident, there was a small crack between the door and the door post but that the door closed easily, the latch caught, and it gave

no trouble; that immediately after the accident occurred, "the door was a little hard to close, when you closed it up—it was binding; . . . yes, sir, ordinarily—prior to the accident you let the door loose and it would go shut, but it wouldn't after that, had to shove it to." He testified that, upon examination of the door, after the accident occurred, he found that the catch overlapped the latch but a very small amount, much less than had been the overlap prior thereto as shown by the worn parts of the catch and the latch; that the hinges of the door were sprung when insured's body struck the inside of the door; that the hinges were sprung but that he did not have them repaired because his attorney advised him to leave them in that condition so that the door could be used in evidence on a trial of this claim.

"There was testimony offered and received which tended to establish that if the hinges of the door were sprung it would have the effect of moving the door forward and thus reducing the overlap of the catch in relation to the latch of the door; that repairs on the door would be required in order to restore the door to its normal position; that the door could be shimmed back into position, and that, if the door was in such a condition prior to a sudden hard application of the brakes while traveling at a speed of fifty miles per hour, and a simultaneous and sudden swerving of the car to the left, it would result in stretching the right side of the body of the car, causing a further separation of the door from the door post, and a further reduction of the 'margin of safety' in the overlap of the catch and latch.

"Defendant's theory is that the damage sustained in 1937 was not a disablement within the provisions of the policy, and that even though it was, the insured's death was the result of a new and independent cause disconnected from the prior damage, and not a part of a continuous course of events as contemplated by the policy provisions. It contends that its offered demurrer to the evidence should have been sustained: First, because the car was not "disabled" within the meaning of the policy; and, second, because if the car was "disabled," then such disablement did not occur at the same time that insured was thrown therefrom but was "disabled" long prior thereto; that the disablement of the car was not the "result of the same continuous sequence of events terminating in the injury."

"Plaintiff's theory is that the above quoted policy provision is ambiguous and that the combination of circumstances shown in evidence, to-wit: The sudden swerving of the car to avoid a collision which caused the right side of the car to stretch so as to release the latch on the door, it not extending far enough into the catch to be safe against being released under such circumstances, combined with the propulsion of insured upward and outward against said door with sufficient force to cause it to fly open and cause insured to be thrown from the car, brought insured's death within the terms of the policy. He contends that the opening of the car door, under such circum-

stances as are here shown constituted a disablement of the car within the meaning of the policy provisions above quoted.

"We have previously construed the following language used in an insurance policy: "By the wrecking or disablement of any . . . automobile . . . in which the insured is riding or driving," and we held that language to be ambiguous. [Kimbrough v. National Protective Ins. Ass'n, 35 S. W. (2d) 654, l. c. 656.]

"We there held that the term 'disablement' was indefinite and ambiguous in its meaning and that a car which received a bent fender in a collision with a wagon, was disabled within the meaning of the policy, although such disablement was of a temporary character and did not interfere in any manner with the continued use and operation of the automobile, which was driven to plaintiff's home without repairs. The fender was then straightened by plaintiff 'putting his foot against the wheel, pulling the fender up as best he could, and by taking a sledge hammer and battering it back into place.' [Kimbrough v. National Protective Ins. Ass'n, *supra*, l. c. 656.]

"In disposing of that case we said: "Read in connection with the context, the word 'disablement' may be accorded the meaning either of disability or damage. Disability is not synonymous with permanent injury.' [Bates v. Friedman (Mo. App.), 7 S. W. (2d) 452, 455.] It is defined in one sense as a crippled condition; and 'disabled' is defined in one sense to mean to detract from the value of and to impair. Impair means to damage. [Webster.] The word 'disablement' implies the meaning of injury or damage to a person or instrumentality, as well as impairment of ability for use." [l. c. 658.]

"The evidence, in the case at bar, is sufficient to support a finding of fact to the effect that the hinges and normal relationship of the catch and latch of the door of plaintiff's car were disabled at the time insured was thrown from the car. [Kimbrough v. National Protective Ass'n, *supra*; Yoshie Maeda v. Sierra Nevada Life & Casualty Co., 292 Pac. 987; Inter-Southern Life Insurance Company of Louisville, Ky., v. Bowyer, 169 N. E. 65.]

"Under the evidence above set forth we think that the question of whether or not a disability of the car was incurred at the same time that insured was thrown therefrom was one for the jury. The jury could have found from the evidence that the giving way of the door catch and latch and the consequent springing of the door hinges was caused by the sudden swerving of the car and application of the brakes, causing insured's body to be propelled with great force against the door, causing said latch to give way and the door to come open. While there was evidence tending to prove that the hinges were sprung and the door and door post were separated by a previous mishap to the car, yet there was also evidence tending to prove that the latch and the hinges were in a worse condition after the accident occurred than they were in prior thereto. There was a noticeable binding of the door when attempting to close it after the accident which was not

present before, and the overlap of the catch and latch was less after the accident than before. Since "disability" may consist of temporary "impairment for use," under our ruling in Kimbrough v. National Protective Ins. Ass'n, *supra,* the fact that the door accidentally came open, under the circumstances here shown, together with the proved damage to the car while the automobile was traveling at a speed of fifty miles per hour, was such proof of "disability" to the car as authorized that question to be submitted to the jury. The use of the car was temporarily impaired. Such being our conclusion we deem it unnecessary to discuss defendant's liability or non-liability for the accidental death had the evidence of disability of the automobile been confined to such disability as it may have suffered several months prior to the fatal accident.

"Defendant suggests that since plaintiff *and insured* intended to take and use the car in its then (damaged) condition, and intended to apply the brakes and swerve the car as was done, no recovery may be had because there merely occurred an unexpected result from an intended act, which would not warrant recovery for an accidental loss. Caldwell v. Travelers' Insurance Company, 267 S. W. 907, is cited in support of such contention. We have held that there was evidence tending to prove that the car was disabled within the meaning of the policy coincidentally with insured's exit therefrom; and there is no evidence whatever tending to prove that insured knew about any prior disability to the car, or knew anything whatever about its condition. Plaintiff, not insured, was driving the car and she did not brake or swerve it. She did not voluntarily throw herself against the door of the car. The case at bar is not governed by the rule announced in the last above cited decision, and the point is disallowed.

"Defendant next contends that plaintiff's instruction 1 is fatally erroneous because it includes matters not shown in evidence and is broader than the pleadings. The pertinent portion of said instruction is as follows:

". . . and, if you find and believe from the evidence that . . . previous to said 23rd day of August, 1938, the right front door of said automobile and the hinges thereof, had been sprung, causing said door to be moved forward in the doorway opening thereof, if so, whereby the overlap of the latch in said door and the catch on the door frame was shortened and weakened, if so, and find and believe from the evidence that the shortening of the overlap between the latch of said door and the catch of said doorway frame, if so, rendered the fastenings for holding said door closed in a *weakened* and *defective* condition, if so, and if the jury further find and believe from the evidence that on the 23rd day of August in the year 1938 while said door fastenings were in said defective condition, if so, . . . that while Anna E. Evans was riding in said automobile at said time and place, plaintiff unexpectedly overtook and ran upon another automobile preceding him on said highway at said time and place, if so, and that in order

to avoid striking said preceding automobile, if so, plaintiff slowed down and swerved said automobile suddenly to the left, and if you find and believe from the evidence that the slowing down and swerving of said automobile suddenly to the left sprung the body of said automobile so as to spring and expand the right front doorway opening thereof, if so, and threw Anna E. Evans against the inside of the right front door of said automobile, if so, and if you find and believe from the evidence that by reason of said door fastenings being in said defective and weakened condition, if so, the springing and expansion of said doorway opening, if so, and the throwing of Anna E. Evans against the inside of said door, if so, sprung and knocked said right front door of said automobile open, and if you find and believe from the evidence that by the springing and expansion of said doorway opening, if so, and by the springing and knocking of said door open, under said circumstances, if so, there was a disablement of said automobile, and if you find and believe from the evidence that as a direct result of such disablement, if any, the said Anna E. Evans was accidentally thrown from such disabled automobile, . . .'' (Italics ours.)

"Plaintiff's petition and theory of his cause of action is founded on the idea that insured was thrown from the automobile which became and was disabled simultaneously with the ejection of insured therefrom. The instruction submits the case on that theory. But defendant complains of the inclusion therein of a requirement of a finding that the door and fastenings were previously in a "weakened and defective" condition and says it did not insure against accident as a result of a weakened and defective condition. The policy insured against loss by the wrecking or disablement of an automobile, or by being thrown from a "disabled" automobile. The inclusion of the required finding as to the previously weakened condition of the automobile was wholly unnecessary and constituted a recitation of and requirement of a finding of facts leading up to the disablement which caused the death. The finding of such facts was unnecessary as a preliminary to the finding of the fact that the death resulted from a disablement of the automobile at the very time of such disablement. Plaintiff, in this respect, assumed an unnecessary burden, of which defendant may not complain.

"The instruction required a finding that 'the overlap of the latch in said door and the latch on the door frame was shortened and weakened.' Defendant contends that this was error because, it says, there was no evidence in support thereof. Such a finding was not necessary in order to find, from the evidence in the case, that the car was disabled.

"It is next contended that error was committed by the introduction in evidence, over objection, of plaintiff's exhibit C, it being an amended or second proof of loss made out and delivered to defendant some two years after the original proof of loss was sent in but prior

328

to the filing of this suit. The original proof of loss was in evidence and failed to show that the automobile was damaged at the time insured was killed. It was plaintiff's contention that the defendant's agent made out said proof of loss, and plaintiff so testified, and that said agent inadvertently or otherwise did not include any statement as to damage to the car, and also reported that insured's head struck the wheel of the car. Plaintiff denied he had told defendant's agent these things but stated that he did not know that said agent had so filled out the proof of loss. Exhibit C was sent to defendant after two previous suits on this policy were dismissed.

"We think the exhibit was properly admitted under the peculiar circumstances here shown. The first instrument was, according to plaintiff, defective in that it did not reflect the true facts concerning the circumstances of the accident, and that the defective condition of the proof of loss was the fault of defendant's own agent. Plaintiff had a right to explain that fact in order not to be bound by the information therein contained, under all of the circumstances here shown. Secondly, plaintiff sued for penalties and attorney's fees and the exhibit was admissible to show that he had furnished defendant with full information of the true facts surrounding the accident and that defendant, nevertheless, thereafter refused to pay the loss. The situation here presented is unlike that existing in Wahl v. Cunningham, 56 S. W. (2d) 1052, l. c. 1059, where the court held that letters and copies of letters written by defendant and by one of his witnesses, and which letters and copies were never seen by plaintiff, were properly excluded from evidence. The situation here is also different from that prevailing in Roberson v. Brotherhood of Locomotive and Enginemen, 114 S. W. (2d) 136, l. c. 142, where we held that private records made by plaintiff's physician were not admissible in evidence. In the instant case plaintiff had a right to show that he had furnished defendant a report of the true facts surrounding the accident, and that he had done so with a view to convincing defendant that it ought to pay the claim before suit was filed. This was proper evidence under the circumstances shown in this case, and in view of the claim for penalties and attorney's fees."

A true designation of the exhibit last discussed is Exhibit F. It was inadvertently referred to as Exhibit C. With this correction all of the foregoing is adopted for the purposes of this opinion.

The remaining point in the case arises upon the insistence of appellant that the court erred in giving plaintiff's Instruction No. 2 authorizing the allowance of damages and attorney's fee, and in entering judgment for the attorney's fee allowed by the jury. The question thus raised calls for a further recital of pertinent evidence.

The record shows that within about five days after the death of plaintiff's wife the local agent of the company requested plaintiff to come to his office to sign proofs of death. The agent had obtained forms for that purpose, one of them being designated "Affidavit of

Beneficiary.'' This form contained forty-two questions, each followed by a blank space for the answer. According to plaintiff's testimony the agent filled in the blank spaces giving the answers to the various questions; that plaintiff signed the affidavit but did not read it, and did not know its contents. One of the questions and the answer thereto showed that the vehicle was not damaged. This affidavit and the affidavits of the doctor, the undertaker, and another person were all forwarded by the agent to the company's office in Chicago about September 1, 1938. Plaintiff received a letter from the company dated September 19, 1938, in which the receipt of proofs of death was acknowledged, and among other things the letter stated: ''The proofs submitted by you show that the death of this insured resulted from an accident not covered by the terms of the policy, and we regret that under the circumstances there appears to be no liability on the part of the Company.'' There was no other reason assigned for denying liability.

Prior to the filing of the petition in this case plaintiff had filed and dismissed two other suits in an effort to collect on the policy, during which time plaintiff's counsel made repeated requests of defendant and its counsel that he be furnished a copy of the affidavit of the beneficiary filed with the company together with proofs of death. All such requests were either ignored or denied. Plaintiff then sought and obtained an order of court, where his second suit was pending, requiring defendant to furnish plaintiff the requested information. In its effort to avoid compliance with this order defendant sought a writ of prohibition in this court, and when denied sought a similar writ in the Supreme Court which was also denied. Prohibition against the enforcement of the court order having been denied the company finally complied, and then plaintiff and plaintiff's counsel, according to the evidence, were first informed of the actual contents of the beneficiary's affidavit prepared by the company's agent; and then learned that the occurrence resulting in the death of plaintiff's wife was not fully or properly described, and not described in such detail as would show disablement or damage to plaintiff's car at the time. Plaintiff then dismissed his second suit and prepared an amended affidavit supplying answers to all of the 42 questions contained in the form previously executed. Answers to various questions in the amended affidavit showed in detail how the accident occurred and how the vehicle was disabled and damaged at the time, all as detailed in the evidence heretofore set out. This affidavit was executed on the 8th day of April, 1940, and was received by the company the following day. It contained information that the affidavit was made to correct the erroneous answers given in the original affidavit, and that in such original affidavit affiant relied upon the company's agent to insert proper answers to the questions; that the answers were inserted by the agent, and affiant understood that the agent from his own personal knowledge and from his own investigation had sufficient in-

formation concerning the accident to enable him to properly make out the answers.

There was notice to the company that unless the claim was paid this action would be instituted. There was no acknowledgment of the receipt of the amended affidavit and no answer to the demand for payment, and the present action was instituted 21 days thereafter.

During the pendency of the second suit, and on June 14, 1939, the defendant took the deposition of plaintiff, which deposition was offered in evidence by defendant during the trial, and it was admitted in evidence by agreement of parties. Plaintiff's testimony at that time was in effect the same as that given upon the trial, including his description of the disablement and damage to the car at the time of the accident.

An official of the company in charge of this claim testified that after proofs of death were received they were reviewed and then an independent investigation was ordered. The investigation referred to consisted of a report on the accident by an individual who was engaged in making credit and other reports for the Retail Credit Company of Kansas City. On request by said credit company this person made a report of the accident and death of the insured. This report reached the company and was before the officials together with the proofs of death at the time liability was denied. Among other things reported was the fact that the car was not damaged in the accident; but the witness who made that report testified that he made no special investigation of the facts and did not interview Mr. Evans or any particular person in regard to the case, and did not examine the car. His testimony shows that his information was gathered from gossip and newspaper reports. The investigator said that he was paid forty cents for his work and that he "couldn't put in a lot of time on it."

Defendant relies upon the information contained in this report, and that contained in the first affidavit of the beneficiary to the effect that the car in which the deceased was riding was not damaged at the time of the accident, as a reasonable ground upon which to deny liability, in view of an alleged ruling in the Kimbrough case referred to above, and as being sufficient to show a lack of vexatious refusal to pay on the 19th day of September, 1938. Defendant's view is that all intervening occurrences from that time until the time of filing this action are not to be given any consideration or weight in determining the question of vexatious refusal to pay. Such a view is untenable. All relevant facts prior to the filing of this suit should be taken into account in determining whether or not there was sufficient evidence to justify the giving of plaintiff's Instruction No. 2 permitting the jury to allow damages and an attorney's fee if they found that defendant's refusal to pay plaintiff the amount of the policy was vexatious. The jury did not allow the damages permissible under section 6040, Revised Statutes Missouri, 1939, but did allow an attorney's fee. Under all the facts and circumstances recited there was ample evidence to sub-

mit the issue of vexation to the jury, and to sustain its verdict. Direct and specific evidence to show vexatious refusal to pay an insurance claim is not required, but the jury may find vexatious delay upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case. The finding of the jury on this issue like any other finding will be sustained if there is any evidence to support it. [Albert v. Metropolitan Life Insurance Company, 95 S. W. (2d) 343, 345, and cases cited.]

The company refused payment and denied liability without stating any specific ground or reason therefor. No particular reason was ever stated, not even in the answer filed in this case which consisted merely of an admission that defendant is a corporation and denied of each and every allegation in the petition. The letter rejecting the claim and denying liability was nothing more than a mere general denial. The company's failure to state its reason why it claimed the accident was not covered by the terms of the policy is in itself evidence of vexation. [Bennett v. National Fire Insurance Company of Hartford, 143 S. W. (2d) 479, 482, and cases cited.]

Thereafter defendant was possessed of all the facts of record and resorted to obstructive tactics which were wholly unwarranted, all of which might be persuasive in the minds of a jury that there was a lack of good faith, and the jury was authorized so to find. In the absence of fair play and good faith on the part of defendant it cannot rely on a disputed question of law which might be involved in the case as an excuse for obstructive conduct, and as a shield against the charge of vexatious delay. "The mere presence of a real law question in the record will not of itself exculpate the defendant from a charge of willful obstruction if there is evidence that its attitude was vexatious and recalcitrant." [Lemay Ferry Bank v. New Amsterdam Casualty Company, 347 Mo. 793, 802, and cases cited.]

The trial court was not in error in giving plaintiff's Instruction No. 2 submitting the question of vexatious delay. The judgment including attorney's fee should be affirmed. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.