**SEMO GRAIN COMPANY, Respondent,**

v.

**OLIVER FARMS, INC., Appellant.**

No. 9852.

Missouri Court of Appeals,
Springfield District.

Nov. 7, 1975.

Hux & Green, Sikeston, for respondent.

Dwight Crader, Sikeston, for appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

BILLINGS, Chief Judge.

Breach of contract for sale of soybeans. A jury was waived, and the court found the defendant had breached the contract and entered judgment for the plaintiff for $93,-750. We affirm.

In March, 1972, the defendant, a farming corporation, entered into a written contract whereby it agreed to sell to plaintiff, a grain dealer, 75,000 bushels of No. 1 yellow soybeans at $3.10 per bushel. Delivery of the soybeans by the defendant was to be made at plaintiff's elevator during January, 1973. Nothing in the agreement required the defendant to grow the soybeans on any certain lands, and, for that matter, defendant was not obligated to grow the soybeans.

From various farms defendant either owned or rented, 19,855 bushels of soybeans were produced and harvested. These soy-

beans were sold by the defendant to other grain purchasers for prices in excess of $3.10 per bushel. The defendant did not deliver any soybeans to the plaintiff.[1]

Plaintiff filed this suit in February, 1973, seeking to recover the difference between the contract price and market price of soybeans as of January, 1973. Defendant's answer, a general denial of plaintiff's petition, was filed in March, 1973. Trial was held October 8, 1973, and the court took the case under advisement. In December, 1973, defendant filed a motion seeking to file an amended answer in which it alleged it was excused from performing the contract by reason of adverse weather conditions pursuant to § 400.2–613 and § 400.2–615, RSMo 1969. Thereafter, the court overruled this motion of the defendant and made findings of fact and conclusions of law in support of the judgment entered for the plaintiff.

At the trial the defendant attempted to show that heavy rainfall during the growing season of 1972 was the reason why it failed to perform the contract. According to defendant's president 3500 acres of soybeans were planted but excessive rainfall destroyed all but 1500 acres of the crop and resulted in a harvest of only 19,855 bushels. He acknowledged defendant did not give plaintiff any notice the contract would not be performed and admitted the soybeans produced by the defendant were sold to other grain dealers for prices higher than that specified in the agreement with the plaintiff.

Plaintiff's objections to defendant's evidence concerning its excuse for nonperformance of the agreement were sustained by the court as being beyond the scope of the issues framed by the pleadings and thus not relevant.

The defendant contends it was excused from performance because of "casualty to identified goods" due to "bad weather con-

ditions" and in support of this contention cites § 400.2–613 of the Uniform Commercial Code. In opposition to this proposition the plaintiff asserts any excuse relied upon by the defendant to escape liability under the contract was an affirmative defense and was not pleaded; that any evidence in support of an affirmative defense was properly excluded as not being relevant; and, in any event, defendant's excuse does not fall within the provisions of the Uniform Commercial Code relied upon by the defendant. As we will shortly demonstrate, we agree with the plaintiff and conclude the trial court correctly entered judgment for the plaintiff.

Matters seeking avoidance of a valid contract are affirmative defenses which must be set out in the pleadings. Rules 55.01, 55.08; *Forty Four O One Hampton Realty Co. v. Keegan*, 426 S.W.2d 701 (Mo.App.1968). The defendant's general denial placed in issue all material allegations contained in plaintiff's petition necessary to support plaintiff's claim, and the defendant was entitled to prove any fact which tended to show plaintiff's cause of action never had any legal existence. *Farley v. Farley*, 181 S.W.2d 671 (Mo.App. 1944). However, where the defendant "[I]ntends to rest his defense upon some fact not included in the allegations necessary to support the plaintiff's case [then] he must plead the same specially or affirmatively in his answer as a condition to the admissibility of such evidence at the trial." *Farley v. Farley*, supra at 673. Defendant's attempted assertion of its excuse for nonperformance is clearly an affirmative defense, "[T]hat is, a defense resting on facts not necessary to support plaintiff's case." *Wilson v. Motors Ins. Corp.*, 349 S.W.2d 250, 253 (Mo.App.1961). Here, the defendant's failure to affirmatively plead excuse warranted the exclusion of evidence relating thereto. *Kallenbach v. Varner*, 502 S.W.2d

---

1. Immediately following the execution of the agreement between plaintiff and defendant the plaintiff resold the soybeans to a third party. This latter contract called for plaintiff to make January, 1973, delivery of 75,-000 bushels of soybeans. Because of defendant's default plaintiff was required to "buy in" the specified amount of soybeans.

446 (Mo.App.1973); *John Deere Co. v. Davis,* 335 S.W.2d 686 (Mo.App.1960).

This brings us to consideration of defendant's claim the trial court committed reversible error in denying the proposed amendment to its answer.

■ We recognize Rule 55.33 allows for liberality in the amendment of pleadings, but are also aware that the disposition of a particular motion to amend remains wholly within the discretion of the trial judge and his decision "[I]s not to be questioned on appeal unless there is a clear abuse of discretion." *State ex rel. Thomas v. Wolfsberger,* 519 S.W.2d 559, 560 (Mo. App.1975). In the case before us there is no doubt but that the defendant had knowledge of the facts upon which the proposed affirmative defense was based for more than six months before its answer, a general denial, was filed. Seven months passed and the parties went to trial on the issues joined by plaintiff's petition and defendant's answer. Defendant's claim of excuse for nonperformance first appears in the transcript after the plaintiff had presented its evidence in support of the petition.[2] Even then the defendant delayed making a motion which specified the nature of the proposed amendment to its answer until several weeks after all the evidence had been presented and the case was in the bosom of the court.

In a similar situation, where the defendant went to trial on a general denial of plaintiff's petition for breach of a contract for sale of hay to the defendant and the defendant complained he should have been permitted to assert an affirmative defense by amendment, the court in *Kallenbach v. Varner,* 502 S.W.2d 446 (Mo.App.1973), held there was no abuse of discretion by the trial court in denying the amendment. In the circumstances presented in this case we cannot convict the experienced trial judge of an abuse of discretion in denying defendant's motion to amend its answer to allege the affirmative defense. *Boling v. State Farm Mutual Automobile Ins. Co.,* 466 S.W.2d 696 (Mo.1971).

■ Aside from the foregoing, the defendant earnestly argues that it is exonerated from liability because of the Uniform Commercial Code. In support of this position defendant relies on § 400.2–613 and § 400.2–615 and says that if the parties contemplate a sale of all or a certain part of the crop of a particular tract of land, and by reason of drought or other fortuitous event, without fault of the seller, the crop of that land fails or is destroyed, nonperformance is to that extent excused. As additional authority, defendant cites the case of *St. Joseph Hay and Feed Co. v. Brewster,* 195 S.W. 71 (Mo.App.1917), which antedated the Uniform Commercial Code.

The difficulty inherent in defendant's contention is that the agreement between the plaintiff and the defendant in this case does not fall within the cited provisions of the Uniform Commercial Code and is not ambiguous in its terms.

In *Bunge Corporation v. Recker,* 519 F.2d 449 (8th Cir.), 1975, on facts nearly identical to those in the case before us, the seller sought to be excused from performance by reason of an act of God in the destruction of part of his crop and pleaded so defensively. In rejecting this pleaded defense the court said: "Since the beans were not identified other than by kind and amount, we agree with the trial judge that the destruction by weather did not constitute an act of God which would excuse performance under

2. During the presentation of plaintiff's evidence the defendant sought to cross-examine plaintiff's president about certain business practices. In response to plaintiff's objection, counsel for defendant stated: "Judge, this is a case tried before the court, and I will ask the court to take judicial notice of the evidence and ask that the pleadings be amended to conform to the evidence." The judge, understandably in our view, failed to treat this ambiguous request as a motion and rule it as such. Motions are required to "state with particularity the grounds therefor, and . . . set forth the relief or order sought." Rule 55.-26.

either the provisions of the Missouri Uniform Commercial Code or the decisional law of that state. § 400.2–613, *St. Joseph Hay & Feed Co. v. Brewster*, 195 S.W. 71 (Mo. App.1917)."

The court continued: "Assuming, *arguendo*, that parol evidence was admissible to explain the agreement, the appellee is faced with the finding of the court on the facts before it that the beans were not identified. Moreover, appellee's attempt to show that the . . . beans were to be produced on an identified acreage flies in the face of the agreement, which provided, among other things: 9. Seller warrants that the commodity delivered under this contract was grown within the boundry (sic) of the continental United States. Obviously, appellee could have fulfilled its contractual obligation by acquiring the beans from any place or source as long as they were grown within the United States. To permit the introduction of parol evidence to show that the beans were to be grown on a particular acreage would completely circumvent the provisions of V.A.M.S. § 400.2–202.

Consequently, we are in total agreement with the district judge in his finding and conclusion that appellee was liable in damages for breach of the contract." [3]

As we earlier indicated herein, the contract of the parties makes no reference to soybeans grown (or to be grown) by the defendant on any identified acreage, nor did it obligate defendant to grow beans at all. Defendant's obligation under the terms of the agreement was to deliver to plaintiff's elevator, during the month of January, 1973, 75,000 bushels of No. 1 yellow soybeans. In return, the plaintiff agreed to pay defendant $3.10 per bushel. The instant agreement did not restrict defendant as to where the beans were grown as did the contract in *Bunge Corporation v. Recker,* supra, and defendant "could have ful-

filled its contractual obligation by acquiring the beans from any place or source . . ."

■ The defendant also complains of the method utilized by the trial judge in assessing damages. Defendant contends the measure of damages should have been the difference between the contract price and the market price of the beans when plaintiff learned of the breach of contract "which was on or before January 1, 1973". Pursuing this, defendant argues the contract was breached when the soybeans were destroyed by adverse weather in the field (prior to January, 1973) and plaintiff "knew, or should have known" this.

Defendant's position is unsound. First of all defendant admitted it at no time notified plaintiff it would not or could not fulfill its contract. Second, the argument presupposes that plaintiff was relying on the contract being performed by defendant furnishing beans grown by it on certain acreage, and this supposition is contrary to the agreement of the parties. Third, the first inkling plaintiff had that defendant did not intend to fulfill the contract was when plaintiff's agent learned defendant was harvesting and selling beans in the latter half of January, 1973. Last but not least, the contract called for January delivery, and the breach did not occur until January 31, 1973. Since the difference between the market price of soybeans during the latter half of January, 1973, and the price specified in the contract was never less than $1.27 per bushel, it cannot be said that an award of $1.25 per bushel damages was excessive.

The judgment is affirmed.

All concur.

3. Since the appellate court disagreed with the district court's method of assessment of

damages the judgment was vacated and the case remanded on that issue.