Christo A. WELTSCHEFF, M.
D., Respondent,

v.

MEDICAL CENTER OF INDEPEND-
ENCE, INC., a General Not For Profit
Corporation also known as Medical Cen-
ter of Independence, Appellant.

No. KCD 30289.

Missouri Court of Appeals,
Western District.

April 7, 1980.

Henry Graf, Kansas City, for appellant.

B. Kent Snapp, Johnson, Lucas, Bush, Snapp & Burgess, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SHANGLER, Presiding Judge.

The plaintiff Weltscheff brought suit in two counts against the Medical Center of Independence for breach of contract. Count I was for money damages and Count II was for an accounting. The breach of contract issue on Count I was tried separately to a jury which awarded the plaintiff a verdict for $10,000. The judgment entered on the verdict was made final and the defendant Center appeals.

The plaintiff Weltscheff, a licensed physician, concluded a contract with the defendant Center to furnish continuous medical services at the hospital emergency room. The written agreement was negotiated between Weltscheff and Massey [business manager] and DiRe [then administrator] for the Center, and subscribed on December 5, 1969. The hospital was not formally open to accept patients until January 13, 1970, but Weltscheff commenced to plan the emergency room operation and to perform other duty under the contract during that interim. The terms of agreement required Weltscheff to staff the emergency room with qualified physicians and to schedule a continuous service. The basic fee to Weltscheff for the contract performance was at the rate of fifteen dollars per hour.

The contract also made provision for termination:

The term of this agreement shall be for twelve months, and shall continue from year to year thereafter, unless terminated by written notice delivered by either party to the other not less than sixty days prior to the date of termination of the agreement.

On January 20, 1972, administrator DiRe for the Center informed Weltscheff by letter that the contract for the emergency room services was effectively terminated on March 24, 1972. The defendant Center contends that this notice, never revoked nor contradicted, dissolved the formal agreement in the manner contemplated by the term of contract.

Sequel to the DiRe letter was immediate: Weltscheff on the very next day wrote to respond that the Center misconceived the termination procedure agreed upon and by the untimely notice was in breach of contract. Weltscheff soon followed with another letter to DiRe which suggested improvements for the emergency room operations and concluded with request that the letter of January 20th be revoked. The day of March 24, 1972, tolled by the DiRe letter as the date of termination, went by without event. The plaintiff continued to perform all customary duty under the contract.

Rather, on July 14, 1972, the successor administrator Patterson informed Weltscheff that the Board of Directors had increased the basic fee to him by one dollar an hour as "an amendment to our contract with you." But then, on October 9, 1972, administrator Patterson wrote to Weltscheff to confirm his understanding that Weltscheff was notified several months ago that his contract for emergency room services with the Center "would be canceled as of the date of its termination on December 10, 1972." That letter invited Weltscheff to meet to discuss alternatives for a continued relationship for emergency room services. That date went by also without event and Weltscheff continued to perform the duty called for by the terms of contract and to receive the benefits promised.

In the summer of 1973, the Center undertook negotiations for an emergency room management contract with Dr. John Wally, as Hospital Emergency Services, Inc., newly formed to purvey that specialty. Weltscheff learned of the negotiations and asked to meet with administrator Patterson to present his own plan for the service. That overture was rejected. On December 21, 1973, the Center signed a contract with the Wally enterprise to manage the emergency room at the hospital, to commence on January 1, 1974. [One perceived advantage of the contract with the Wally professional corporation was that Wally would bring unitary control to that phase of operation of both the defendant Medical Center of Independence and the Independence Sanitarium Hospital—under a single management—by his service as Emergency Room Chief at both facilities.] The duty given to the Wally enterprise by the contract with the Center was more inclusive than the performance required by the separate Weltscheff contract. The contracts, however, coextended the duty to provide the presence of a physician in the emergency room at all times. The agreement with Weltscheff expressly designated the performance of duty under the contract was "at all times" as that of independent contractor.

In late December of 1973, before the contract with Wally came into effect, Weltscheff met with Wally and administrator Patterson about the new arrangement which impended for January 1, 1974. Weltscheff [by his testimony] did not discuss the terms of that contract, other than to be told that from that date Wally would set the schedule for the emergency room physicians. He left with the understanding, only, that the Wally function was to coordinate the emergency room operations of the two Independence hospitals, the Medical Center and the Sanitarium. He left with the assurance from Patterson that, whatever the terms between the defendant and Wally, his own contract with the Center was intact. Weltscheff testified that Patterson reaffirmed: "Your contract is going to stay no matter what we do." With that, Weltscheff placed himself under Wally, not as his employee, but in a manner consistent with the terms of his personal contract with the Center. In his words, although he was interested to remain, "[t]he understanding from that meeting came out that I will continue working under my contract and if they sign any agreement with Dr. Wally, he is going to buy my contract or write me the same contract [sic]." In effect, the evidence of Weltscheff on that issue was that, although he acceded to a work arrangement in the emergency room under the supervision of Wally, he refused employment other than on the same terms as provided by contract with the Medical Center. His performance of duty at the hospital after January 1, 1974, was on that premise.

The evidence by the defendant was otherwise: The administrator Patterson gave testimony that the several physicians who served the emergency room, Weltscheff included, were notified in December of 1973 of the contract concluded with Wally to commence management of that facility on January 1, 1974. Weltscheff made no protest but agreed to discuss employment with Dr. Wally, without mention of a subsistent contract with the Center. Wally gave testimony that during latter December, 1973, he offered Weltscheff employment in the emergency room to commence the first of the new year, and that after discussion as to the schedule and the rate of pay, Weltscheff acceded. Among the terms concluded, Weltscheff agreed to accept fifteen dollars per hour, a reduction of one dollar from the current emolument from the defendant Center.[1] In the course of negotiation, or thereafter, Weltscheff made no mention to Wally of a subsistent personal contract with the Center [a fact contradicted by the Weltscheff testimony that he had disclosed that formal relationship to Wally]. Wally conceded that after Weltscheff became his employee, he mentioned his former status as independent contractor with the hospital. Wally assumed that Weltscheff had earlier operated under "some agreement" with the Center, but had no intimation as to the actual relationship. Weltscheff never refused a duty given by Wally after the first of the year because of a conflict with the Center contract. Rather, from the first day of January, 1974, Wally commanded the physicians in the emergency room, Weltscheff among them, scheduled the work and directed activity. Weltscheff consulted with Wally thereafter as "boss" on the problems of the department and submitted to his supervision.

In due course, Weltscheff received earnings checks from the Wally corporation. From the first, income and social security taxes were withheld from these remittances. Weltscheff confronted administrator Patterson to complain of the practice and [according to Weltscheff] Patterson agreed to take the matter up with Wally because "[t]hat was not supposed to be that way." The practice, however, was never corrected. Weltscheff continued to insist that the deduction of taxes from his earned income was not consistent with his status as self-employee under the contract with the Center. Weltscheff had no concern that Wally was signatory on the checks—he conceived

---

1. The evidence does not dispute that, whether as employee of the Wally corporation or as an independent contractor with the Center, after January 1, 1974, Weltscheff received payment for services by the Wally corporation checks on the basis of fifteen dollars per hour.

that a matter between the Wally corporation and the hospital, so long as the procedure did not infringe his relationship with the defendant Center.

Weltscheff eventually confronted Wally. The testimony of Wally confirms that Weltscheff insisted that he be paid gross earnings as an independent contractor, and not by taxes withheld as for an employee, but Wally never acceded either to that practice or to that definition of status. In an attempt to accommodate Weltscheff, nevertheless, Wally made inquiry of the Internal Revenue Service as to whether the arrangement for services allowed payment of earnings in gross. The agency ruled against that possibility. Wally conveyed that determination to Weltscheff and by letter recommended that his personal attorney counsel with the Wally corporation attorney concerning the continued necessity to withhold taxes, as well as other employment matters. Weltscheff continued remonstrations as to the mode of payment became so mettlesome, that in late April of 1974 Wally terminated the Weltscheff employment two weeks hence. On May 13, 1974, administrator Patterson came to the emergency room to inform Weltscheff in person that he no longer worked there. Weltscheff, nevertheless, continued to appear regularly and spent the time casually or in treatment of private patients. On August 26, 1974, Weltscheff formally resigned from the medical staff at the Center, and so became ineligible to use the emergency room or other hospital facility to treat private patients. His daily appearance at the hospital discontinued from that date.

The plaintiff recovered on a theory of contract that the defendant Medical Center prevented Weltscheff from performance of the contract between them and thereby breached the terms of agreement to his damage. The instructions to the jury were on the forms of MAI 26.02 and MAI 4.01. The appeal contends that the submissions were erroneous both as to form and substance. As to the verdict director, the error of substance contends that the litigation raised an issue of fact as to the termination of the contract and so MAI 26.01, which assumes a *subsistent* contract between the parties, was not an apt submission. Exactly, that point contends there was substantial evidence the bilateral contract between Weltscheff and the Center was no longer in being after the first day of 1974—the only year damage accrued to Weltscheff by his own claim—and so MAI 26.01, which submits only breach of acknowledged terms of an existent agreement, was not a proper instruction.

The execution of the written agreement between Weltscheff and the Center was acknowledged. The terms of agreement [as we now determine] were unambiguous. The only question framed by the litigation was whether, as a fact, that agreement terminated before the damage Weltscheff claims accrued. If so, then any continued performance by Weltscheff was no longer under the contract and the Center owed him no due. If not, then proof that the Center prevented Weltscheff from further performance, with consequent damage sustained a recovery for breach of the contract. The pleadings of the defendant Center, the pretrial positions, the advisement of proof to come in the opening statement, the evidence of the defendant witnesses, the assessment of that evidence in the final argument, and the instruction submitted by the defendant, all conform to a single theory: the subsistent contract between Weltscheff and the Medical Center was effectively terminated by the defendant by the method prescribed for that purpose in the contract or, in any event, by the plaintiff by a voluntary assumption of employment with Wally to perform the emergency room service—and that either act dissevered the obligations of agreement *before* the accrual of damage plaintiff contends for.

It is the contention of the defendant, nevertheless, that the contract terms for the commencement and the termination of the contract were ambiguous, and so properly for determination by the jury on evidence [proffered but refused] as to what the contractors intended for those terms. The defendant asserts error in the refusal of evidence to prove those elements of the written contract.

■ The termination procedure of the contract provides [paragraph 2] that

[t]he term of this agreement shall be for twelve months, and shall continue from year to year thereafter, unless terminated by written notice delivered by either party to the other not less than sixty days prior to the date of termination of the agreement.

The defendant contends that extrinsic evidence, if allowed, would show the contractors intended that termination be effective under this term simply by a notice to the other party sixty days in advance of the date chosen for termination by the initiator of the event. The rejection of this tender of evidence was to determine as a matter of law that the termination provision of the contract was unambiguous and not an issue for the jury. The trial court declared, in effect, that the contract as written clearly provided that the term of agreement was for twelve months [December 5, 1969, through December 4, 1970]² and from year to year unless terminated by notice not less than sixty days from the proximate December 4th. We sustain the exclusion of the offer to prove the intention of the parties as to the termination term of contract—and hence determination of that issue as a matter of law—on several grounds.

The merit of that adjudication of law apart, the contention of the Center by the offer of proof that the contractors intended a right to terminate upon mere notice without reference to a contract date contradicts the method actually employed by the Center to attempt termination and was, in any event, waived by affirmative decision of the defendant to continue the contract obligation after the termination [by its own reckoning] came into effect.

■ The original procedure to terminate the contract was by the January 20, 1972, letter from administrator DiRe to Weltscheff that the relationship would dissolve on March 24, 1972. That date went by without event. Thereafter, on July 14,

2. The commencement date of the contract as well as the method of termination was in dispute. The contract made no provision as to when it became operative but was executed by the contractors on December 5, 1969. The trial court gave effect to the rule of law that where the written agreement does not define the time from which the parties are bound, the date of execution [December 5, 1969] governs. The defendant hospital did not open to the public to receive patients until January 13, 1970. The defendant offered evidence to prove that the date intended by the contractors to be bound by the undertaking was from January 13, 1970, and not December 5, 1969. The court rejected that tender of evidence. *No doubt the law* raises a presumption that, in the absence of other provision of the instrument of agreement, the date the contract was subscribed or delivered governs the obligations of agreement. *Cosby v. Harding*, 553 S.W.2d 535, 536[1-3] (Mo.App.1977); 17A C.J.S. Contracts § 359 (1963). That rule of law, however, merely *presumes* to integrate into the written agreement a term left unexpressed and may be dispelled by evidence of the *actual* intention of the parties as to that element of agreement. 3 Corbin on Contracts, § 593. The parol evidence rule does not exclude such proof since it neither varies nor contradicts the writing but merely completes an interstice. *Kansas City Bridge Co. v. Kansas City Structural Steel Co.*, 317 S.W.2d 370, 374, et seq. (Mo.1958). In the normal course of proof, a trial court should allow such parol evidence of intention to contract. In this case, however, the rejection by the court of the tender of proof by administrator DiRe, a party to the negotiation and contract, was harmless. The date the obligations of contract were assumed is totally irrelevant to the contention of the defendant Center. Whether the parties intended to be bound from December 5, 1969, [as the court ruled] or from January 13, 1970, [as the Center contends] does not bear on the theory of termination the defendant asserts and offered to prove: by a notice at least sixty days in advance of the date selected by the party—without reference to a contract date. Neither of the two letters of termination from the Center to Weltscheff [January 20, 1972, and October 9, 1972] related the notice for severance to January 13th of the year. The defendant is, in any event, estopped to contend that Weltscheff was not to commence performance until January 13, 1970. There was no doubt that, although the hospital was not open for patients until that date, Weltscheff commenced promptly upon execution of the agreement on December 5, 1969, to perform the duty given to him by the terms of the contract: to organize the function of the emergency room, to solicit for the physician personnel, to examine employees of the hospital and other described functions. That the plaintiff received no fee for the service during that interim, does not alter the benefit the Center accepted during that period and preclusion from complaint.

1972, successor administrator Patterson informed Weltscheff that the Board of Directors had granted an increase in the basic fee for his services from $15 to $16 per hour as *"an amendment to our contract with you."* [Emphasis added.] Then, by letter dated October 9, 1972, administrator Patterson informed Weltscheff

> It is my understanding that you were notified several months ago that *your contract* for emergency room services with the Medical Center of Independence *would be cancelled as of the date of its termination on December 10, 1972. This letter is to confirm the termination of that contract* . . .. [Emphasis added.]

That notice explains that the original announcement intended the date of termination to coincide with the end of the contract year [mistakenly given as December 10, 1972, rather than as December 4, 1972.][3] The successive letter makes plain that the defendant Center understood the termination provision operated to dissolve the work relationship, upon proper notice, at the end of the contract year—a view coincident with the sense accorded that contract term by the trial court. The increase in basic fee to Weltscheff in the interim between the two letters of notice was an affirmation by the Center of a contract relationship, still subsistent, between them. The supplemental notice to terminate under the contract given by the letter of October 9, 1972, was ineffective simply because given less than sixty days before the end of the contract year, December 4, 1972.[4] The month of that December passed with the contractors *in statu quo.* The plaintiff Weltscheff continued performance of the contract duty and the defendant Center continued to make recompense according to the contract terms. If we assume the premise of the Center, that the supplemental notice surely took effect by December 4, 1972, that termination was waived by the continued conduct of the defendant for more than two years to accept performance under the contract and to render it. Thus, as a matter of law, the contract was never terminated under the procedure required by the terms of agreement, and was not for the jury. It is evident that the Center never undertook to terminate the contract by the procedure espoused on this appeal: a notice sixty days in advance of the date announced for termination, without regard to the end of the contract year. Thus, the appeal poses a question only hypothetical and without justiciable issue.

Termination of agreement, if at all, was accomplished not under the procedure of the contract, but by the voluntary displacement of the Weltscheff work relationship with the Center by assumption of employment with Wally for the emergency room services. That issue on contested evidence, was submitted to the jury by Instruction No. 4 and was found for the plaintiff Weltscheff.

■ The defendant contends that MAI 26.02, verdict director for the plaintiff, was an erroneous submission because the dispute as to whether the contract subsisted at the time the claim for damages accrued [May 14, 1974, and thereafter] rendered the terms of the contract uncertain and an instruction reserved for the breach of a con-

---

3. The defendant conceded on final argument that, as to the allusion to December 10 as the day on which the contract year terminated, "maybe Mr. Patterson made a few days' mistake." That comment culminated the argument that proper notice was given the first time, but if not, then surely the second notice was sufficient for the purpose.

4. That the defendant Center understood that the contract with Weltscheff was terminable only at the end of the contract year [despite the first letter that termination was to take effect on *March 24, 1972*] was the action of the

Board of Directors of the Center on March 9, 1972, that "[i]f someone is hired before the end of Dr. Weltscheff's contract to take his place, that Dr. Weltscheff be compensated for *the remainder of the contract term.*" [Emphasis added.] This action, taken only fifteen days before the first notice of termination was to take effect—at least as that notice would have it—shows that the defendant acknowledged a liability to Weltscheff for the balance of the contract year, the postures of the first notice notwithstanding.

tract in being, inappropriate.[5] MAI 26.02 assumes a bilateral contract agreed as to terms and submits the breach only. *Varn Co. v. Hamiltonian Federal Savings & Loan Association*, 488 S.W.2d 649, 651[2] (Mo. 1973). It is the theory of MAI that a verdict director shall submit every essential element of a recovery or defense supported by evidence and actually in dispute. *Carter v. Boys' Club of Greater Kansas City*, 552 S.W.2d 327, 333[13] (Mo.App.1977). The plaintiff pleaded a contract with defined terms negotiated and given consent, and breached by the conduct of the defendant which prevented performance after May 13, 1974. The defendant does not contradict the execution of the contract, or that the instrument was undertaken with full assent, but only that the obligation of agreement terminated before the claim for damage [after May 13, 1974] accrued to the plaintiff. That was the single posture adopted by the defendant throughout the litigation.[6] Thus, the terms of contract were not in dispute, but only whether the contract continued in effect at the time the claim for damage accrued to the plaintiff contractor. If the contract was then terminated, there could be no breach and the Center owed no damage. The *existence* of contract was an element of the proof for the plaintiff. The matter of *termination* was not an element of that cause of action, but rather a matter of special defense. It is a plea which does not deny an element of the petition for recovery, but seeks to avoid liability even though the plaintiff prove the cause of action. A matter—such as termination—which seeks avoidance of a valid and subsistent contract is an affirmative defense. Rules 55.01 and 55.08; *Beuc v.*

*Morrissey*, 463 S.W.2d 851, 856[5] (Mo. banc 1971); *Semo Grain Company v. Oliver Farms, Inc.*, 530 S.W.2d 256, 258[1, 2] (Mo. App.1975); 71 C.J.S. Pleading § 163 (1951). The defendant understood the required practice, submitted termination as an affirmative defense by Instruction No. 4, and so rendered the point academic.

■ The defendant suggests also that the verdict director for the plaintiff was an impermissible deviation from the model MAI 26.02. Instruction No. 3 adopted that form to submit:

Your verdict must be for the plaintiff if you believe:

First, defendant Medical Center of Independence, Inc., prevented plaintiff from performing his contract with defendant, and

Second, because of such failure, defendant, Medical Center of Independence, Inc.'s contract obligations were not substantially performed, and

Third, plaintiff was thereby damaged, unless you believe that plaintiff is not entitled to recover by reason of Instruction No. 4.

The deviation from MAI 26.02[7] is the omission of *did not* from proposition First of that submission. The defendant contends that the lapse resulted in an instruction which does not require the jury to find a breach of a duty under the contract essential to recovery under MAI 26.02. The theory of the case submitted by the plaintiff was simply that the defendant Center prevented him from performance of the contract by the refusal to allow his further medical ministrations at the emergency room after May 13, 1974. That the instruc-

5. This separate contention, quite apart from the question as to whether the termination provision of the contract was so ambiguous as to render the contract uncertain, asserts that a contract already terminated also renders the contract uncertain and so not properly a submission under MAI 26.02.

6. The contention that the termination provision of the contract was unclear and so placed the agreement in dispute, we have concluded, contradicts the conduct of the defendant which acceded to the clear sense of that term—as

found by the trial court—in the attempt to terminate Weltscheff under the contract, and renders that point merely theoretical.

7. MAI 26.02: Your verdict must be for plaintiff if you believe:
First, defendant *did not* [here insert the nature of the breach], and
Second, because of such failure, defendant's contract obligations were *not substantially performed*, and
Third, plaintiff was thereby damaged.

tion used *prevented* rather than *did not allow* was a deviation in form only. They are terms equivalent in substance so that the deviation from the strict pattern could not have misled or prejudiced the jury. *Bartleman v. Humphrey*, 441 S.W.2d 335, 347[24–25] (Mo.1969); *Brown v. St. Louis Public Service Co.*, 421 S.W.2d 255, 259[3] (Mo. banc 1967). The breach of contract upon which plaintiff rested recovery was defined unmistakably by proposition First as submitted.

■ The defendant says, nevertheless, that the breach submitted by verdict director Instruction No. 3—that the Center prevented further performance by Weltscheff—contradicts the breach pleaded— that the Center failed to pay wages although Weltscheff made the performance required by contract. The contention fails. The duty of the Center under the contract, among any other, was to provide Weltscheff "space for emergency treatment." The denial of this facility was a breach of agreement. That the petition may have pleaded the breach as a failure to pay compensation is merely semantical. The obligation on the defendant to pay arose on the obligation of the plaintiff to perform. The inhibition of performance by defendant, when the plaintiff was ready to perform, precluded the certain accrual of wages. There was no doubt that plaintiff had been fully compensated for services through May 13, 1974. He was prevented from wages after then by the refusal of the defendant to allow him access to the emergency room and to render service there. That point is without merit.

■ The last contention against Instruction No. 3 asserts that the court failed to give the jury a definition of *substantially performed* as used in proposition Second. There was no objection to this procedure at the trial or on the motion for new trial. The point was not preserved for review on appeal. Rules 70.03, 78.07 and 84.13(a);

*Cole v. Evans*, 546 S.W.2d 748, 750[2, 3] (Mo.App.1977).

The defendant also challenges damage Instruction No. 5. That submission was on the model of MAI 4.01:

> If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the breach of contract of defendant, Medical Center of Independence, mentioned in the evidence.

The defendant complains that the instruction fails to delimit recovery of damages to the scope of the evidence. The evidence was [8] that the plaintiff accepted all earnings paid him through May 13, 1974, and after that, he was allowed to perform no contract service despite his daily faithful readiness, on August 26, 1974, Weltscheff resigned from the Medical Center staff. The effect of resignation was to deprive him of the contract right to treat and charge private patients in the emergency room. This undoubted evidence, the defendant contends, limited whatever damage was recoverable to the interim between May 14, 1974, and August 26, 1974,—or at the most, from May 14, 1974. To this end, the defendant offered Instructions B and C to limit recovery of damage to the respective period. The tender of instructions was refused.

The elements of recovery proved by the Weltscheff evidence compensation at the contract rate of $16 per hour from May 13, 1974, through December 4, 1974, the end of the contract year; amounts withheld for taxes from January 1, 1974; the sum of $1 for all hours worked from January 1, 1974, —as an unauthorized reduction from the contract rate; and vacation pay for two weeks. This damage transcended the temporal limits Instructions B and C imposed, and so that tender was properly refused. The contention that resignation on August

---

8. There was evidence that immediately upon receipt of the first check from Wally after January 1, 1974, Weltscheff complained to Patterson that he had paid on the basis of $15 per hour rather than $16 per hour under the contract. His acceptance of earnings after January 1, 1974, according to Weltscheff, therefore, was with that reservation.

26, 1974, from the Medical Center staff foreclosed any Weltscheff claim for damage thereafter overlooks the significance of that event and the legal consequence of an ineffective [if so found] termination of contract before the end of the term. It became apparent to Weltscheff after more than a month of faithful daily attendance at the emergency room that he would not be allowed to perform duty under the contract, so he resigned from the staff. The resignation was induced by the unlawful termination of the contract [so we must assume the jury found], and resignation from the staff served only to deprive him of extracontractual income from the treatment of private patients at that facility. The resignation was not a repudiation of contract; termination was. The claim for the basic fee under the contract was due Weltscheff if, as was found, the jury returned for the plaintiff on the theory breach of contract submitted by Instruction No. 3 and the implicit rejection of the lawful termination of contract submitted by both Instructions No. 3 and No. 4.

■■■ The measure of damage for breach of contract is measured by the amount of money which will compensate the loss which performance of the contract would have prevented. MAI 4.01 embodies that general principle of damage and leaves advisement to the jury as to the elements of that damage to the final summation of the evidence by counsel. *Boten v. Brecklein*, 452 S.W.2d 86, 93[9, 10] (Mo.1970). A defendant may tender a modification of a damage instruction the party deems too expansive. *Barber v. MFA Milling Co.*, 536 S.W.2d 208, 210[6, 7] (Mo.App.1976). Instructions B and C were ill-advised, however, and properly refused.

■■■ The defendant contends, also, that the use in the damage instruction of *breach of contract* rather than *occurrence* as in the MAI 4.01 paradigm was an erroneous modification which misled the jury. The argument goes that the term *breach of contract* caused confusion because the verdict director Instruction No. 3 did not use that terminology. Of course, entire Instruction No. 3 submitted nothing other

than breach of contract. To be sure, the breach was described in terms of the failure of performance, but that is the exact requirement of MAI 26.02. The other argument, that *breach of contract* deviates from *occurrence*, a term reserved in the damage instruction to distinguish events when the evidence shows more than one event that could have caused the damage, is governed by *Bartleman v. Humphrey* and *Brown v. St. Louis Public Service Company*, supra. As the defendant concedes in argument, the only event to constitute breach was refusal by the Center to allow Welscheff to continue duty under the contract at the emergency facility after May 13, 1974. The jury was no less percipient and was not misled.

The judgment is affirmed.

All concur.