Goldwin E. MILLER and Theresa M. Miller, Respondents,

v.

NATIONAL UNION FIRE INSURANCE COMPANY, Appellant,

Dr. John M. Spencer, Respondent.

No. 24123.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1964.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 1, 1965.

Application to Transfer Denied March 8, 1965.

Hale Houts, Joseph R. Hogsett, Dwight L. Larison, Houts, James, Hogsett & Mc-Canse, Kansas City, for appellant.

Alvin D. Shapiro, Stinson, Mag, Thompson, McEvers & Fizzell, Kansas City, for respondents.

BROADDUS, Presiding Judge.

Plaintiffs-Respondents, Goldwin E. and Theresa M. Miller, brought this suit against defendant-appellant, National Union Fire Insurance Company, and Dr. John M. Spencer and Florence W. Porter, for a declaratory judgment, alleging that a "justiciable controversy ripe for declaratory relief ex-. ists between the parties."

The petition alleged that in November, 1959, plaintiffs entered into a contract for the sale of certain described real estate in Buchanan County to them by defendants Spencer and Porter; that in July of 1959 National had issued "to the plaintiffs and. to defendants Spencer and Porter" a fire insurance policy insuring said property in the amount of $10,000 for a term ending July, 1964; that plaintiffs were the equitable owners of said policy.

The petition alleged that in December, 1961, the premises were completely destroyed by fire and that plaintiffs had made a demand on National for $10,000, which National had refused; also that plaintiffs had demanded that defendant Spencer file suit against National for the benefit of plaintiffs, but that Spencer had refused to do so.

The petition prayed for a declaratory judgment determining the rights of the parties; that the court decree that plaintiffs were the equitable owners of the policy and National was indebted on said policy to plaintiffs and to defendants Spencer and Porter in the amount of $10,000, and penalties and attorney's fees.

In subsequent proceedings it appeared without dispute that defendant Porter had transferred her interest in the property to defendant Spencer prior to the issuance of the insurance policy of defendant National; that she was not named as an insured in the policy; and by mutual acquiescence Mrs. Porter was not mentioned in the subsequent pleadings.

National denied by its answer all the allegations of the petition except the allegations that there was a controversy ripe for declaratory relief; that Spencer contracted for the sale of the real estate to plaintiffs; that in July of 1959 National issued its policy insuring defendant Spencer against loss by fire; and that in December 1961, while the policy was in effect, the premises were completely destroyed by fire, and had a value in excess of $10,000.

National's answer also alleged that plaintiffs at the time of the fire were insured by MFA fire insurance policy on the property in question, with a standard mortgage form clause insuring Spencer against loss not to exceed $8,000, as his interest might appear; that National's policy contained the provision that in the event of loss National would not be liable for a greater proportion of Spencer's loss than the amount insured under its policy bore to the whole insurance covering the property against the peril involved, whether collectible or not; that under said policy provision National's liability to defendant Spencer was limited to 10,000/18,000ths of any loss sustained by him as mortgagee; that the interest of defendant Spencer at the time of the fire did not exceed $7,537.50, which should be prorated according to the said policy provision; and that plaintiffs had no interest in the National policy and no cause of action against defendant National.

By separate answer, defendant Spencer denied all the allegations of plaintiffs petition except the allegations of paragraph 2 in respect to the contract of sale of the insured property to plaintiffs and paragraph 4 in respect to the destruction of the property by fire.

The subject fire insurance policy was purchased by respondent Spencer on July 9, 1959. The premium was originally paid by Spencer. On November 4, 1959, respondents Miller, as purchasers, and respondent Spencer, as vendor, entered into a Contract for Sale of Real Estate covering the insured property. Said contract for sale was a contract for deed, for it provided that the deed was to be deposited by Spencer with an escrow agent while payments were made by the Millers to said escrow agent. Under the contract, failure of the Millers to make timely payments worked a breach of the contract and Spencer was entitled to terminate the contract and keep all payments previously made as rental for the Millers' use and possession of the prem-

ises. Only upon payment of the entire contract sum would the Millers be entitled to delivery of the deed by the escrow agent.

Pursuant to the provisions of said contract respondents Miller further paid Spencer $271.88, the prorated premium for the unexpired term of the policy. The insurance broker who sold the policy was informed of the contract by Spencer but said there was no need to change the policy "inasmuch as no deed was being delivered to the Millers." On January 16, 1961, respondents Miller obtained $8,000 additional insurance on this property with MFA Mutual Insurance Company of Missouri, to which policy was attached a mortgage clause in favor of respondent Spencer.

On December 2, 1961, the premises were totally destroyed by fire. The value of the premises at said time, and the loss to respondents, was in excess of $18,000. MFA Mutual paid the entire amount of its policy to respondents Miller and Spencer. At said time, the balance due Spencer from the Millers under said contract for sale was $7,537.50. After due notice of said loss was filed by respondent Spencer, the sufficiency and timeliness of which are not here questioned by appellant, said appellant refused to pay the full $10,000 but has admitted owing on said policy the sum of only $4,187.50.

All three parties filed Motions for Summary Judgment in May, 1963. On August 16, 1963, the Circuit Court entered "Findings of Fact, Conclusions of Law and Judgment Entry" entering judgment in favor of respondents and against appellant in the amount of $10,000, plus $1,000 accrued interest. The court found and concluded that Spencer was at all times the full legal owner of the property; that the unearned premium for the policy sued upon was paid for by respondents Miller, pursuant to the provisions of the Contract for Sale; that the policy did not prohibit other insurance on the property; that the loss was total

and exceeded the aggregate of the two policies; and that appellant was therefore liable in the full amount of the policy. Appellant filed certain after-trial motions which were by the court overruled. This appeal followed.

Appellant contends that the court erred in entering the summary judgment against it because plaintiffs were not parties to the insurance policy in suit and "acquired no interest in the policy by this contract of purchase of the property insured, or by any other means"; that "plaintiffs were neither necessary nor proper parties to any claim against National."

. In effect appellant states that respondents Miller, as vendees in the Contract for Sale of Real Estate, have no interest in the subject policy because they are not named therein. This same argument was made in McDowell v. Morath, 64 Mo.App. 290, where this court stated, page 298:

> "If the mortgagee, under an arrangement with the mortgagor, insure the mortgaged property at the charge of the mortgagor, in such case, in the event of loss, the insurance money will be paid to the mortgagee, extinguishing *pro tanto* the debt of the mortgagor to the mortgagee. (Citing cases.) *In such case, the mortgagor may maintain an action on the policy and to this end is entitled to sue in the name of the mortgagee.* [Norwich Fire] Insurance Co. v. Boomer, 52 Ill. [442] 142." (Emphasis supplied.)

That this is the well-settled law of Missouri was again recognized by this court in the recent case of Ingram v. Kiewit, Mo. App., 331 S.W.2d 681. In an opinion affirming the judgment of the lower court this court stated, p. 684:

> "Count 11 of plaintiffs' petition is based upon the premise that said insurance policy, although standing in the name of the Kiewits alone, was carried for the benefit of both the sellers

and the buyers as their interest might appear, since the buyers were obligated by the contract for deed to maintain and pay for said insurance. The law of Missouri is well settled that where the mortgagee, under an agreement with the mortgagor, insures the mortgaged property at the charge of the mortgagor, the insurance proceeds, in the event of loss, must be applied . by the mortgagee toward the extinguishment of the debt or the restoration of the property, *and the mortgagor 'is entitled to have an account taken of the proceeds.'* (Citing many cases.)

"As defendants have intimated in their brief, we do not have a true mortgagor-mortgagee relationship here. However, the rule of law applicable in mortgagor-mortgagee cases has also been applied where the property is destroyed while the same is subject to a contract for deed or contract for sale as here * * *." (Emphasis supplied.)

In view of this plain language how can appellant maintain that the Millers have no standing to bring this suit? Appellant does not—indeed, cannot—dispute that the Millers, under the provisions of the Contract for Sale, paid the premium on the policy, as they were required to do. Its main argument seems to be that although they paid for the premium, they did not pay it directly to appellant or its agent, but rather to Spencer who had previously paid the insurer. This apparently is meant to imply that if the premium had been paid directly to the insurer, it would have had notice of . the existence of the Contract for Sale.

■ But this argument is answered fully by the trial court's finding that the respondent Spencer "held the. full legal title to the insured property against all the world * * *" Thus, if Spencer was the full legal title owner from the date the policy was issued to the date of the fire, why should notice of the Contract of Sale create

an exception to the Millers' undoubted right under the McDowell and Ingram cases to bring this suit? Both of those cases give this right to sue to the vendee if, under the Contract for Sale, the property is insured "at the charge" of the vendee. But clearly this requirement is not for the benefit of the insurer. It is to settle and define the rights as between vendor and vendee. If notice to the insurer was necessary, it should have been required by the policy.

If perhaps title had passed by the signing of the Contract for Sale, then notice of the same to insurer might somehow be pertinent. But title *did not* pass. The insurer's risk was in no way increased, for title never passed.

■ Thus, the trial court's undoubtedly correct finding that Spencer was at all times legal owner precludes any argument that notice to appellant of the Contract for Sale was in any way a bar to the Millers bringing this suit. There was no increase of the insurer's risk, for title remained in the hands of the named insured. Indeed, the insurance broker who sold this policy even told Spencer at the time the contract for deed was signed that the policy need not be changed because "no deed was being delivered to the Millers."

Nor does appellant cite any authority why this fact of indirect payment should carve out an exception to the clear rule of the McDowell and Ingram cases that the vendee under a contract for deed may maintain this suit. The case of Mahan v. Home Ins. Co., 205 Mo.App. 592, 226 S.W. 593, cited by appellant, does not bear on this point at all. It simply states the usual rule that an insurable interest is necessary to maintain a suit on a policy. In the Mahan case this court said there was nothing in the record to show plaintiff had an insurable interest. Here the record clearly shows, under the McDowell and Ingram cases that plaintiffs have such an insurable interest.

■ Having taken the full premium from Spencer, who was then repaid by the Millers, appellant should not be permitted to receive a windfall. By barring the Millers' right to bring this suit, appellant would be receiving such a windfall. The policy did not require notice and, lacking such requirement, the terms of the policy should be construed most strongly against the insurer.

The rationale of the McDowell and Ingram cases rests squarely on the firm basis of fiduciary relationship. It cannot be doubted that Spencer owed a fiduciary duty to the Millers in regard to this policy. This is why this court has so firmly held that vendees who pay the premium have a right to an accounting of the policy proceeds, even to the extent of bringing suit on behalf of the vendor. It need hardly be demonstrated that the vendees have a dollar-for-dollar interest in this policy, for any amount less that the full $10,000 which is recovered comes directly out of the Millers' pocket. Under the theory that a trust will never fail for want of a trustee (see, e. g., Hall v. M. B. O'Reilly Realty & Investment Co., 306 Mo. 182, 267 S.W. 407; Canada v. Daniel, 175 Mo.App. 55, 157 S.W. 1032), this court has therefore held the vendee can maintain a suit such as this. To bar the vendee from doing so merely because it reimbursed the vendor who paid the insurer, rather than paying the insurer directly, would be unjust. The only reason appellant could possibly insist on direct payment would be so that it could have had notice of a change of title. But since title never changed and was in the named insured at all times, all reasons for the necessity of such notice disappear.

Under this court's language in the McDowell and Ingram cases, it is clear that the Millers had the right to bring this suit.

Appellant next contends that "the contract of sale by defendant Spencer to plaintiffs of the premises insured reduced Spencer's interest in the National policy to

that of a mortgagee for security for the unpaid purchase price owed by plaintiffs, prorated however, to the amount which the unpaid purchase price bore to Spencer's combined mortgagee coverage under the National policy and the MFA policy taken out by plaintiffs, which is a sum not to exceed $4,187.50."

■ When the loss is total and exceeds the aggregate of the two policies, there can be no prorating of either policy. As stated in Appleman on Insurance, Sec. 3905, p. 272:

"Under a valid prorating provision, the liability of the insurer is generally considered to be measured by the proportion that the amount of its policy bears to the total insurance on the property. *Where the amount of the loss equals or exceeds the aggregate sum of all the insurance on the property, the insured is entitled to recover the total amount of the risks assumed by each insurer and there will be no apportionment.*" In support of the text many cases are cited. (Emphasis supplied.)

Many of the cases disallow prorating where the loss is total because of the "valued policy" statute. In Missouri, our "valued policy" statute is 379.140 RSMo V.A.M.S. In Michigan Fire & Marine Ins. Co., v. Magee, 240 Mo.App. 767, 218 S.W.2d 151, the insurer contended before this court that although the loss was total and exceeded in value the aggregate of the policies, the insurer could nevertheless prorate on its policy and that the insured was entitled only to the extent of her dower interest in the destroyed property. This court rejected that contention, stating, page 155:

"Our valued policy statute, Section 5930 (now 379.140) is designed to and does put at rest the measure of damages in a suit on a fire insurance policy in case of total loss of the property insured, and arbitrarily fixes the same at

the 'amount for which the (property) was insured,' less depreciation.

" * * * Therefore, when the whole of her interest so insured was destroyed by fire, she was entitled under the statute to the face of the policy, with interest, no depreciation being shown."

Here, there is no question of depreciation, appellant having admitted that the insured house which was totally destroyed exceeded $18,000 in value, or greater than the aggregate of the two policies involved.

In Horine v. Royal Ins. Co., 199 Mo.App. 107, 201 S.W. 958, the court construed Sec. 7020 RSMo., 1929, a predecessor to the current Sec. 379.140. The court stated that the Supreme Court in Havens v. Germania Insurance Co., 123 Mo. 403 l. c. 417–418, 27 S.W. 718, 26 L.R.A. 107, had ruled that:

"(W)here several concurrent fire policies have been written on a building which is wholly destroyed, *each company is liable for the full amount of its policy.*" (Emphasis supplied.)

See, also, Smith v. Caledonian Insurance Co. of Scotland, 195 Mo.App. 379 l. c. 384; 191 S.W. 1034.

■ The cases cited by appellant are entirely irrelevant to the issue of prorating. Cases cited by appellant throughout its brief simply state the familiar rule that in order to prevent gambling contracts, an insured must have an insurable interest in the property insured. There is no authority in any of these cases for the novel proposition that the amount of recovery is limited to the balance of the insured's interest.

There is no need to unduly prolong this opinion by a discussion of the other contentions advanced by appellant, as we do not deem them material to the proper disposition of this case.

The judgment was for the right parties and should be affirmed. It is so ordered. All concur.