Peggy GRAVNING *v.* THE AMERICAN DRUGGISTS' INSURANCE COMPANY

75-291                              534 S.W. 2d 754

Opinion delivered March 29, 1976

*Niblock, Hipp & Odom,* for appellant.

*Putman, Davis & Basset,* for appellee.

CARLETON HARRIS, Chief Justice. On August 10, 1971, a deed was executed from Elsie Norwood to Peggy Gravning, appellant herein, conveying a lot and house in Lincoln, Arkansas; also, on August 10, appellant and her brother, Darrell Mattox, executed a note to the Bank of Lincoln for $7,000.00, and Mrs. Gravning also executed a mortgage on the aforementioned property in that amount. At the same time, appellant executed a deed to this property to her brother, and this deed remained in the custody of the bank, unrecorded. Mattox had paid the full consideration for the house on behalf of his sister, and he received the proceeds of the $7,000.00 loan from the bank. The Norwood deed was recorded on August 11. In December, 1971, Mrs. Gravning signed another note to the Lincoln Bank for $3,117.41, an F.H.A. improvement loan. On February 19, 1973, a homeowner's insurance policy was issued to appellant by The American Druggists' Insurance Company with policy limits of $15,000.00 for the dwelling and $7,500.00 for the contents, and on October 24, 1973, the dwelling was totally destroyed by fire. In February, 1974, Mrs. Gravning and her brother filed a complaint against the insurance company for recovery[1] of the face amount the policy, $15,000.00, for the total loss of the dwelling, and $2,500.00 was sought for loss of the contents, plus interest, penalty and reasonable attorney's fees and costs. The company filed a cross-complaint and paid the sum of $7,468.85, the balance due on the two notes to the Lincoln Bank and prayed to be subrogated to the bank's rights on the indebtedness. This payment was made during

---

[1]Mattox took a voluntary nonsuit before the case was submitted to the jury.

the pendency of the lawsuit and thereafter, the bank notified Mattox to pick up the entire file, which included the deed given to him by his sister. This deed was recorded on June 26, 1974. On trial, at the conclusion of appellant's evidence, she moved for a directed verdict, and when it developed that appellee did not desire to put on any testimony, the motion was renewed, but again denied.

The jury returned a verdict for Mrs. Gravning in the amount of $1,500.00[2] for the dwelling and $2,000.00 for the personal property. After a motion for a new trial was denied, appellant appealed to this court setting out four points of asserted error. We will discuss three of these points, the fourth having no bearing under the conclusions reached.

The determination of this litigation does not depend upon a statement of the facts,[3] for it is conceded that Mrs. Gravning had an insurable interest in the dwelling. From appellee's brief:

"It is, of course, undisputed that at the time of the fire, appellant remained liable on the promissory notes which she had executed, one of which had also been executed by Mattox. If, however, Mattox was the owner of the property at the time of the fire, appellant's only in-

---

[2]This figure was clearly a compromise and not based on any instruction from the court, the court telling the jury that if they found she was the owner of the property at the time of the fire, she would be entitled to the difference in what had been paid the bank and the $15,000.00 coverage; if they found she was not the owner at the time of the fire, she would be entitled to nothing.

[3]Mrs. Gravning and Mattox testified that she executed the deed in order that the property would "stay in the family" in case she decided to leave Lincoln or "if anything happened to her." Appellant and her children moved into the house and she obtained the $3,117.41 F.H.A. home improvement loan, lived there, paid taxes on the property in 1971, 1972, and 1973, but after receiving her college degree at the University of Arkansas in June, 1973, she moved to Tulsa seeking employment; thereafter, she went on to San Diego, California, still seeking employment, and was living there at the time of the trial. She had not made Lincoln her home since 1973, although she still received mail at Lincoln at the time the house burned. After Mrs. Gravning left Lincoln, her brother twice rented the house to other persons, checking with appellant each time, and he had rented it a third time just before the fire. The rentals were applied to the monthly payments on the note at the bank, Mattox paying the difference.

terest in the property stemmed from her potential liability on the notes and appellee respectfully submits that the extent of her insurable interest was the amount owed on the two notes at the time of the fire. It is undisputed that appellee voluntarily paid into court the amount due the Bank of Lincoln on the two promissory notes signed by appellant. This amounted to some $7,-468.85. Upon payment of this amount, which discharged appellant's liability to the Bank of Lincoln in full, appellant had no further interest in the property and anything beyond the amount she owed on the notes would be a windfall to her. In short, appellant's insurable interest was limited to her potential liability on the promissory notes."

In *Tedford* v. *Security State Fire Insurance Company*, 224 Ark. 1047, 278 S.W. 2d 89, Tedford owned a one-eleventh interest in the insured property, but obtained a policy for its full value. After fire destroyed the property, the company denied liability on the ground that Tedford had misrepresented his interest in the application for the policy. The trial court found for Tedford, but limited the recovery to one-eleventh of the face value of the property because of a provision in the policy that purported to limit any recovery to the amount of the insured's interest in the property.

On appeal, this court affirmed as to the company's liability but reversed as to the amount of recovery, awarding Tedford the face value of the policy under Ark. Stat. Ann. § 66-3901 (Repl. 1966)[4] (then codified as § 66-515). It was noted that the statute provided a "valuation fixed in advance by the parties by way of liquidated damages in the case of total loss by fire of the property insured without the fault of the insurer," and earlier decisions were cited that had held void attempts by insurance companies to limit recoveries to less than the face value in contravention of the statute. We said:

---

[4]"66-3901. VALUED POLICY LAW. — A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered to be a liquidated demand and against the company taking such risk, for the full amount stated in such policy, or the full amount upon which the company charges, collects or receives a premium; provided, the provisions of this section shall not apply to personal property."

"The rule applicable in the present situation is stated in 29 Am. Jur., Insurance, § 1196, as follows: 'It is recognized by all the cases decided upon the question that under a valued policy or the provisions of a valued policy statute, the insured insuring the property at a given valuation accepted by the insurer at the time of the issuance of the policy as the value of the insured's interest may recover the full value insured, even though he in fact has a limited or qualified interest worth less than the amount of the insurance. The insurer may not go behind the policy and show that the insured's interest is worth less than the amount of the policy.' Cases from other jurisdictions which support this rule are collected in 68 A.L.R. 1352.

"We think the Washington court properly interpreted the purpose and effect of the valued policy statute in *Bright v. Hanover F. Ins. Co.*, 48 Wash. 60, 92 Pac. 779, where it said: 'The appellant contends that this section does not apply where the interest of the insured is a limited or qualified one, such as that of a tenant, a party in possession, etc.; but with this contention we are unable to agree. ***

'The courts hold that the valued policy law applies in cases of concurrent insurance, and we perceive no sound reason for holding that the act does not apply to insurance on special or limited interests in real property. On the contrary, we think the plain reason and policy of the law require us to hold otherwise. It is doubtless true, as contended by the appellant, that the aggregate insurance on the several parts may exceed the value of the whole, but so may a single policy, and so may concurrent policies. To a certain extent the law undoubtedly gives legal sanction to [a] wagering contract, but the policy of such a law is for the Legislature, and not for the courts.' "

Two subsequent decisions have upheld face-value recoveries when insureds had less than full interests in the respective properties. In *Hensley v. Farm Bureau Mutual Insurance Company of Arkansas*, 243 Ark. 408, 420 S.W. 2d 76, the insured had signed a contract to sell the property to a third

party before the fire occurred. The insured had remained liable on a mortgage on the property, however. The purchaser of the property also obtained coverage, and after the fire, was paid the full amount by his company. Thereupon, he paid Hensley. Hensley instituted suit to collect the full amount of his policy under the valued policy statute, but the trial court denied recovery on the basis that Hensley would be unjustly enriched. On appeal, we reversed and allowed full recovery. The point at issue was different from that in the present litigation, but, of course, we found that Hensley had an insurable interest for the full amount.

Similarly, in *Interstate Fire Insurance Company* v. *James*, 252 Ark. 638, 480 S.W. 2d 341, James had only a one-third interest in the insured property. The other owners had obtained separate insurance, however, and after a total fire loss the company sought to have liability prorated among the various insurers. This court affirmed a summary judgment for James for the face value of his policy under § 66-3901, stating that *Hensley* was controlling.

It is thus apparent that Mrs. Gravening was entitled to recover the full $15,000 (less, of course, the amount paid to the bank), and had the proper motion for directed verdict been made, the failure to grant same would have constituted error. Let it be remembered that Mrs. Gravning was also seeking $2,500.00 for loss of personal property. Under testimony presented as to the value of the personal property, the amount due was a fact question, and actually the jury returned a verdict of $2,000.00. Accordingly, appellant was not entitled to a directed verdict on this phase of the litigation. In making her motion, it may well be that counsel for Mrs. Gravning had in mind only the real estate, since he mentioned the indebtedness to the Bank of Lincoln, the mortgage and the note, and stated "clearly by Arkansas law this is an insurable interest as defined by the cases that would entitle her to the face amount of the policy. We ask for a directed verdict." However, the motion simply was for a directed verdict which would include all that she sought in her complaint, and if appellant only had reference to the property covered by the valued policy law, the motion should have been more specific.

However, appellant sought several instructions which the court refused, and the refusal is asserted to constitute error. We agree with appellant that four of these should have been given. The first of these, Requested Instruction No. 7, recited the statute (§ 66-3901).

Appellant's Requested Instruction No. 13, as follows, should also have been given:

"Under a valued policy on the provisions of a valued policy statute, the insured insuring the property at a given valuation accepted by the insurer at the time of the issuance of the policy as the value of the insured's interest may recover the full value insured even though he, in fact, has a limited or qualified interest worth less than the amount of the insurance, and the insurer may not go behind the policy and show the insured's interest is worth less than the amount of the policy."

Four instructions were also requested on insurable interest, Requested Instruction No. 8 defining such an interest, and quoting verbatim the statute, Ark. Stat. Ann. § 66-3205 (Repl. 1966). While a more succinct instruction could have been given, the court did not in any of its other instructions properly inform the jury as to insurable interest, and the instruction should have been given. Likewise, Requested Instruction No. 6 should have been given, as follows:

"The interest of the mortgagor is not defeated by a voluntary sale of the premises where he remains liable for the mortgage debt."[5]

It is contended, and we agree, that the court also erred in giving Instruction No. 10 and No. 12, the former being to the effect that if the deed from Mrs. Gravning to her brother was effective to convey title, she could not recover, and No. 12 erroneously telling the jury that if she had transferred her interest or ownership in the house prior to the fire, the verdict should be for appellee.

It follows from what has been said that the judgment

---

[5] See *Couch on Insurance* 2d § 24:71 (1960).

should be reversed. While the $2,000.00 awarded by the jury for the loss of personal property is not attacked on this appeal, still, under our cases, it is necessary that the entire judgment be reversed. The rule is that a verdict at law "is an entirety which we cannot divide by affirming in part." *Wilson v. Davis*, 230 Ark. 1013, 328 S.W. 2d 249. In *Martin* v. *Street Improvement District No. 349*, 180 Ark. 298, 21 S.W. 2d 430, Chief Justice Hart stated:

> "The practice in this State has been that, when a verdict is set aside as being inadequate, the court must grant a new trial in the whole case. The reason is that a verdict, as the foundation of a judgment at law, is an entity, and cannot be divided by the trial court."

Accordingly, because of the errors herein set out, the judgment is reversed and the cause remanded to the Washington County Circuit Court with directions to proceed in a manner not inconsistent with this opinion.

It is so ordered.