Betty M. DeWITT, Respondent,

v.

**AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, Appellant.**

No. 65140.

Supreme Court of Missouri,
En Banc.

March 20, 1984.

William J. Gotfredson, Patrick M. Reidy, Theresa Shean Hall, Kansas City, for appellant.

Steven K. Wickersham, William R. Merryman, Kansas City, for respondent.

BILLINGS, Judge.

Suit on a fire insurance policy. The jury awarded plaintiff Betty DeWitt $31,082.00 on the policy, $2,443.54 interest and $5,600.00 attorney fees. The court of appeals affirmed in part, reversed in part and remanded for further proceedings. We ordered the case transferred because of general interest and importance. The defendant-insurer alleges numerous points of error relating to three general issues at trial:

(1) plaintiff's insurable interest in the house destroyed; (2) the amount of personal property destroyed by the explosion and fire; and (3) plaintiff's claim for vexatious refusal to pay under the policy. We review the case as an original appeal [Mo. Const. art. V, § 10] and affirm.

The sequence of events giving rise to plaintiff's judgment are summarized as follows: (1) In 1972 plaintiff and her husband Joseph C. DeWitt bought a house and lot at 1301 Eastwood Road in Harrisonville, Missouri, taking title in the plaintiff's name alone. (2) In September of 1977 the defendant insurer issued a fire insurance policy on the property naming plaintiff as the insured. (3) On March 5, 1979 plaintiff and her husband were divorced. The marriage dissolution was uncontested and the division of marital assets was in accordance with a property settlement agreement. Under the agreement and dissolution decree, the house and lot were set over to Joseph DeWitt as his sole and separate property. The agreement provided that Betty DeWitt would execute a quitclaim deed to Joseph DeWitt subject to the existing mortgages which he would assume. Custody of the only child, Joseph C. De-Witt, Jr., was awarded to the father. (4) In April of 1979 plaintiff moved out of the house and her former spouse continued to occupy the property with his son. (5) Joseph C. DeWitt died on January 29, 1980. (6) The plaintiff reoccupied the Harrisonville property and lived there with her son. The plaintiff invested considerable money and labor making improvements on the property. (7) On May 1, 1980 the defendant insurance company issued a new policy to plaintiff insuring the dwelling for $38,-500.00, personal property in the amount of $19,300.00 and living expense coverage at $3,900.00. Plaintiff subsequently paid the full premium. (8) On August 10, 1980 the insured premises were totally destroyed by an explosion and fire. (9) Plaintiff gave notice of the casualty and filed a proof of claim with the insurer who advanced her $1,000.00 on the contents coverage of her policy. (10) At defendant's request, on October 30, 1980, plaintiff submitted to an examination under oath to supplement the proof of loss she had filed. During this examination, defendant first learned of the insured's divorce and the facts relative to her ownership of the property pursuant to her property settlement agreement and divorce decree. (11) At the time of the loss, plaintiff was a co-maker with her former husband on three mortgage notes. The first and second mortgage holders, United Missouri Bank and Home Savings & Loan were named as loss payees under the policy. As of the date of loss, the balance and accrued interest were respectively, $5,081.55 and $18,736.04. A third mortgage was held by a party named Hollenbeck for the amount of $2,069.76. (12) Defendant formally denied plaintiff's claim on December 22, 1980. (13) Betty DeWitt filed this action in February, 1981, alleging recovery under the policy for the full insured amounts and damages under § 375.-420, RSMo 1978, for vexatious refusal to pay. (14) On March 3, 1981, the defendant made payment to United Missouri Bank as mortgagee in the amount of $5,081.55. (15) On April 30, 1981, the insurer made payment to Home Savings & Loan as mortgagee in the amount of $18,736.04.

As a prerequisite to the enforcement of an insurance contract, public policy demands that the insured have an insurable interest in property both at the time of making the contract and at the time of loss. *Prewitt v. Continental Insurance Co.*, 538 S.W.2d 902, 905 (Mo.App.1976); *Galati v. New Amsterdam Casualty Co.*, 381 S.W.2d 5, 9 (Mo.App.1964); *Estes v. Great American Insurance Co.*, 112 S.W.2d 153, 156 (Mo.App.1938). The requirement of insurable interest is necessary to prevent wagering under the guise of insurance and temptation to destroy the insured property. *See* B. Harnett & J. Thornton, *Insurable Interest In Property: A Socio-Economic Reevaluation of a Legal Concept*, 48 Colum.L.Rev. 1162, 1178–83 (1942).

Defendant first contends plaintiff did not have an insurable interest in the insured property as of the date of loss. Central to this position is its claim that plaintiff's

interest in the property materially changed or ceased to exist between the date the contract was first entered and the date of loss.

 We find substantial evidence in the record to support a finding that the contract underlying the present lawsuit was entered into between the parties on *May 1, 1980.* While it is evident that the parties to the instant action first entered into an insurance contract in 1977, we find that the loss in question did not occur under this original policy. The renewal of an insurance policy is a separate and distinct contract for the period of time covered by the renewal unless it is apparent that the parties merely intended the renewal to constitute a continuation of the old policy. *See* 44 C.J.S. *Insurance* § 283–288 (1945); *Krey Packing Co. v. Employers' Liability Assur. Corp.*, 127 S.W.2d 780, 782 (Mo. App.1939) (renewal of fidelity policy or bond). The policy issued on May 1, 1980, substantially extended the plaintiff's coverage beyond that of the 1977 policy. The face of the renewal policy stated that it was effective "from 5–1–80". From the foregoing we conclude that the parties entered into the contract on May 1, 1980 and the plaintiff's interest in the property was not materially changed between the date of inception of the contract to insure and the date of loss. We next consider whether this interest is sufficient to enforce the contract.

 A person has an insurable interest in property if she will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against. 44 C.J.S. *Insurance* § 175 (1945). In *American Central Insurance Co. v. Kirby*, 294 S.W.2d 556 (Mo.App.1956), the court recognized that an insurable interest "may be a special interest entirely disconnected from any title, lien, or possession." *Id.* at 561. The issue is not what is the insured's title to the property, but rather,

would she suffer pecuniary damage by its loss. Thus, an insurable interest "may be derived from possession, enjoyment, or profits of the property, security or lien resting upon it, or it may be other certain benefits growing out of or dependent upon it." *Id.*

Plaintiff claims an insurable interest based upon her status as sole owner of record title, her personal liability as mortgagor on three notes secured by the property, her expenditure of materials and labor to make improvements on the property and her possession and occupancy of the house as a dwelling place.[1]

Defendant maintains that the decree of dissolution of marriage of March 5, 1979 worked a complete divestiture of any interests the plaintiff had in the insured dwelling without any affirmative act to be undertaken by the plaintiff with respect to the conveyance of her interest therein.

The court approved decree of dissolution of marriage found that plaintiff and her husband, Joseph C. DeWitt, had entered into a written property settlement agreement, providing, *inter alia:*

3. Wife agrees to execute a Quit-Claim to real property described as:

[legal description]

and the Husband agrees to assume all liability on the following notes and deeds of trust that encumber the property:

Home Savings Association in the original amount of $20,125.00 with a present balance of approximately $19,-300.00 with payments of $228.00 per month;

Cass County Bank in the original amount of $13,632.00;

Mildred and Herschell Hollenbeck, a judgment entered by the Cass County Magistrate Court in the approximate amount of $1,700.00;

and to hold Wife harmless therefrom:

---

1. We do not consider plaintiff's claim as guardian or trustee for her son's interest in the property because these issues were first raised on appeal.

The divorce decree ordered in pertinent part:

> The parties shall perform the terms of their Property Settlement Agreement as follows:
>
> II. Respondent [Joseph C. DeWitt] shall have as his sole and separate property all of the following:
>
> b. House located at 1301 East Wood Road, Harrisonville, Missouri, subject to existing liens and encumbrances.

It is clear that if the proceedings are properly conducted, and the language of the decree is sufficient, the court in a marriage dissolution may convey title to real property without further action by the parties.[2] However, the court also has the power to order spouses to execute deeds of conveyance. If a party does not comply the court may enforce its decree by issuing a supplemental order decreeing the transfer of title or proceed by contempt. Section 452.325, RSMo 1978. *See* R. Fowler & J. Krauskopf, *Property Provisions*, 29 J.Mo.Bar 508, 513–15 (1973).

We find merit in the plaintiff's claim that the decree of divorce was insufficient in its language to effectuate a conveyance without an affirmative act by her to convey her interest therein. The decree merely orders the parties to do certain acts and does not automatically convey the property by its plain language. A supplemental order would be a prerequisite to effect an exchange of title. However, the foregoing does not imply that the plaintiff's interest in the property remained unchanged. The terms of the property settlement agreement were contractual and Jo-

seph C. DeWitt had a right to enforce the contract. We conclude that subsequent to March 5, 1979, Joseph C. DeWitt held title in equity to the property without deed and plaintiff held legal title in trust for him.[3]

After the divorce, the plaintiff remained personally liable on three mortgage notes secured by the insured property. A mortgagor who remains liable for indebtedness on property after a conveyance has an insurable interest and is entitled to maintain an action, even though the beneficial ownership may be vested in another. *Meyer v. MFA Mutual Insurance Co.*, 543 S.W.2d 822, 825–26 (Mo.App.1976); *Farmers' & Laborers' Co-op. Insurance Ass'n v. Bank of Centralia*, 227 Mo.App. 1068, 56 S.W.2d 606, 607 (1933); *American Insurance Co. v. Dean*, 243 S.W. 415, 417 (Mo. App.1922) (dicta). *See also Wrausmann v. Kansas City Fire & Marine Insurance Co.*, 477 S.W.2d 741, 743 (Mo.App.1972) (person secondarily liable on promissory note secured by property has an insurable interest in the property).

In light of the foregoing we hold plaintiff had an insurable interest in the property.[4] We find it unnecessary to determine the extent of her interest in the property because of our disposition of the following issue.

The plaintiff argues that under the Missouri valued policy statute, § 379.140, RSMo 1978, the insurance company cannot contest the actual value of her interest. The defendant maintains that the valued policy statute is inapplicable for the following reasons: (1) the plaintiff's divorce materially altered her insurable interest in the

---

**2.** The provisions are set forth in Ch. 452 on marriage dissolution and Ch. 511 on judgments, RSMo 1978.

**3.** The situation is analogous to the status of vendor and purchaser under a contract to convey real estate. *See Mahan v. Home Insurance Co.*, 205 Mo.App. 592, 226 S.W. 593 (1920). However, the present case is to be distinguished from cases where the owner has made an effective conveyance of the property to another, extinguishing his legal *and* equitable title, but continues to occupy the premises and make improvements thereon. *See e.g., Raney v. Home*

*Insurance Co.*, 213 Mo.App. 1, 246 S.W. 57 (1922).

**4.** In *American Central Insurance Co. v. Kirby,* 294 S.W.2d 556 (Mo.App.1956), the court recognized: "[A]fter the date of the contract [the vendor] continued to hold legal title for the purpose of securing the agreed purchase price in trade. It must be conceded that such was a valuable and substantial interest. It cannot be said that the destruction of the property itself would not and did not damage her pecuniary interest in it." *Id.* at 562. (dicta).

property after the policy was issued, (2) the plaintiff has only a limited insurable interest not based upon ownership; and (3) the insurer did not have adequate knowledge of facts to make an accurate evaluation of plaintiff's interest in the property when the policy was renewed and coverage increased.

Missouri's valued policy statute reads in pertinent part:

> "In *all suits* brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the *defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property;* and in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant; ...."

§ 379.140, RSMo 1978 (emphasis added).

In light of our previous discussion regarding the effect of the policy renewal on May 1, 1980, plaintiff's interest in the property was not materially changed or altered during the term of the policy upon which this action is maintained.[5]

We are also not persuaded by defendant's argument that the valued policy statute does not apply where the interest of the insured is a limited or qualified one not predicated upon full ownership.

An insurable interest can arise in real estate by interest other than ownership. *See Wrausmann v. Kansas City Fire & Marine Insurance Co.*, 477 S.W.2d at 743. A person with ownership interest less than the whole may recover the whole policy limits under the valued policy statute. *See Michigan Fire & Marine Insurance Co. v. Magee*, 240 Mo.App. 767, 218 S.W.2d 151, 155 (1949) (widow with dower interest); *Farmers' Mutual Fire & Lightning Insurance Co. v. Crowley*, 354 Mo. 649, 651, 190 S.W.2d 250, 252 (1945) (life tenant). We find no reason not to apply the same rule with regard to a limited ownership interest as a limited non-ownership interest. *See Gravning v. American Druggists' Insurance Co.*, 259 Ark. 523, 534 S.W.2d 754 (1976) (mortgagor who had conveyed unrecorded deed allowed to recover full value of policy for loss of dwelling and contents even though she had limited or qualified interest); *Bright v. Hanover Fire Insurance Co.*, 48 Wash. 60, 92 P. 779 (1907) (purchaser allowed to recover for full policy amount even though his interest was limited one). Our holding is not inconsistent with the public policy rationale underlying § 379.140. "[I]n order to prevent gambling contracts, an insured must have an insurable interest in the property insured. There is no authority ... for the novel proposition that the amount of the recovery is limited to the balance of the insured's interest." *Miller v. National Union Fire Insurance Co.*, 386 S.W.2d 668, 673 (Mo. App.1964).

We also reject defendant's remaining theory for not applying Missouri's valued policy statute. The purpose of the

---

**5.** The present case is distinguished from the decision in *Lumbermens Mutual Insurance Co. v. Edmister*, 412 F.2d 351 (8th Cir.1969). In *Edmister*, the insured conveyed the insured property *during the term of the policy* and in so doing *materially altered his interest in the policy*. Upon learning of this fact, the insurance company's agent called the plaintiffs about cancelling the policy and the plaintiffs told the agent not to cancel the policy because they still retained an interest in the property. The agent did not cancel the policy and the property was subsequently destroyed by fire. The court stressed

that the insured's statements to the insurance agent constituted a *material misrepresentation which voided the policy. Id.* at 356. At least one commentator has been critical of the court's opinion in *Edmister*, noting: "the court makes an assumption, not justified from the facts presented in the opinion, that the plaintiffs were reasonably aware that their occupancy of the premises did not give them a valuable insurable interest—to them the occupation might have been very valuable." 4 J. Appleman, *Insurance Law & Practice*, § 2241, p. 34 (1982 Supp.).

valued policy statute is to place upon the *insurers* the burden and responsibility for an evaluation of the insured's interest and of the property insured at the date of the insurance contract. We note that the defendant has never alleged that the plaintiff committed fraud or concealment in obtaining the policy of insurance or misrepresented her interest therein at any time prior to the loss.

In *Gamel v. Continental Insurance Co.*, 463 S.W.2d 590 (Mo.App.1971), the court reviewed the history and purpose behind the valued policy statute and noted:

Section 379.140, V.A.M.S., was first enacted in 1879. It was construed and held constitutional in *Daggs v. Orient Ins. Co.*, 136 Mo. 382, 38 S.W. 85, where at l.c. 87 the court points out the purpose of the statute is to *prevent insurance companies from taking reckless risks* in order to obtain large premiums by advising them in advance that they would be held to the value agreed upon when the policy was issued; that while *no company is required to insure property without first examining the premises*—and may even refuse full coverage thereafter—after having the *opportunity to inspect*, fixing the amount of the risk, and receiving the premium for such amount it was estopped from denying the valuation stated in the policy; that the purpose of the act was wise and wholesome but, if not, its change was for the legislative not judicial authority; and that such valued policies were in use as a result of contract long before enactment of statutes of this nature. The court then held that under such statutes the face value of the policy '... was conclusive, both at law and in equity, save in cases of fraud.'

*Id.* at 593 (emphasis added).

▮ Absent fraud, misrepresentation or collusion the valuation in the policy is conclusive upon the parties. An insurer has an obligation to attempt to ascertain the basis of an insured's interest in the property prior to contracting to insure the property. In some cases this may require actual inspection of the property, in other cases such as the instant one, merely making a verbal attempt to ascertain the insured's status will be sufficient. The record before us reveals no evidence of the insurer's attempt to ascertain from the insured her interest in the property. Where the plaintiff had a reasonable and justifiable basis for believing she had an insurable interest in the property, the insurer cannot issue a policy and collect premiums thereunder and later complain that the insured's interest was overvalued if the insurer never attempted to ascertain that interest through reasonable inquiry. Thus, "if the insured's valuation is accepted without investigation, the insurer cannot thereafter contend that there was fraudulent overvaluation." 6 J. Appleman, *Insurance Law & Practice*, § 3828, p. 254 (1972).

Defendant's next point is that plaintiff offered no substantial evidence of the value of the personal property destroyed. The policy insured the contents of the dwelling for the actual cash value of the property at the time of the loss.[6] Plaintiff's evidence proving value consisted of her own testimony, the testimony of defendant's property claims adjuster and the record of a personal property inventory booklet plaintiff prepared after her loss and submitted in support of her claim.

▮ An owner may testify, without further qualification, as to the reasonable market value of an item of personalty which has been destroyed. *Carnell v. Darryman's Supply Co.*, 421 S.W.2d 775, 779 (Mo.1967); *Casada v. Hamby Excavating Co.*, 575 S.W.2d 851, 854 (Mo.App. 1978). However, the owner's competence is a presumption which may be rebutted by a showing that the owner in fact lacks knowledge of the value at issue or her opinion is based upon an improper standard. *Casada v. Hamby Excavating Co.*, 575 S.W.2d at 855.

---

6. Instruction No. 11, patterned after MAI 4.02, used the term "fair market value" rather than "actual cash value". The two terms are essentially synonymous in the instant context.

Defendant points to the following testimony as undermining the foundation upon which plaintiff attempted to testify regarding valuation:

Q. [Plaintiff's Attorney] Do you have an opinion as to how much your property was worth at the time of the loss?

A. Well, I would know—it's hard to say because there is things that I wouldn't have taken anything for.

Q. But the market value, what a willing buyer would pay and what a willing seller would sell for, a person who does not have attachments to that property, do you have an opinion as to what its actual cash value was at the time of the fire?

A. No, I don't. I really don't.

Defendant maintains that the instant case is analogous to *Bridgeforth v. Proffitt*, 490 S.W.2d 416 (Mo.App.1973), where the court held the trial court erred in permitting value testimony by the property owner. In *Bridgeforth*, the owner merely testified as to the amount each item originally cost, or assigned, without further elaboration, a "valuation" or "value" to each item. Furthermore, on cross-examination, the owner disclaimed any knowledge of the market value of any item or category of personalty prior to the fire. *Id.* at 424. Such was not the case here.

■■■ Defendant's argument ignores the significance of the remainder of plaintiff's testimony. After the above quoted exchange, plaintiff testified, item by item, her opinion of the fair market value of the contents of the dwelling. Specifically the plaintiff stated what was in her home, each item's original cost, the condition of each item at the time of loss, and what it would cost to replace it. Viewing the evidence in a light most favorable to plaintiff, we conclude that her initial response merely indicated she was unable to give a truthful

aggregate figure for all such property in the house. However, when each piece of property was considered separately she was able to establish its value.[7] In addition, unlike *Bridgeforth*, the plaintiff's testimony was not the sole evidence of valuation. We find that the record contains substantial evidence to support plaintiff's claim for loss of personal property. We also reject defendant's point that the record is inadequate to support plaintiff's claim for additional living expenses.

■■■ Defendant's third point argues that the trial court erred in sustaining plaintiff's objection to the proffered testimony of Ruban Gomez that there was an absence of furniture or personal property in the *family room/bedroom* of the plaintiff's house at the time of the loss. The court prohibited the admission of such evidence on the grounds that, *inter alia*, it conflicted with defendant's prior answer to an interrogatory and defendant failed to seasonably amend the same. After a careful review of the record, we conclude that the trial court's ruling to exclude the testimony was properly within its discretion.

Defendant's fourth point avers the court committed reversible error in submitting plaintiff's verdict directing instruction. To return a verdict for plaintiff, the instruction required the jury to find defendant issued a policy on plaintiff's house and on the contents of the house, but it made no mention of the claimed living expenses.[8] A separate instruction explained the measure of calculating living expenses if the jury returned a verdict for plaintiff.

■■■ While the omission of living expenses from the verdict director was erroneous, it was harmless error. It is not reversible error for an instruction to omit facts conceded by all parties to the lawsuit. *See Byrnes v. Poplar Bluff Printing Co.*, 74 S.W.2d 20, 26 (Mo.1934); *Weltscheff v. Medical Center of Independence, Inc.*, 597

---

7. The jury is free to disregard or disbelieve whatever facts are inconsistent with its conclusion. Furthermore, the jury could believe one part of plaintiff's testimony and reject another.

*Burr v. Singh,* 362 Mo. 692, 243 S.W.2d 295, 298 (1951).

8. The verdict director was patterned after MAI 31.09.

S.W.2d 871, 878 (Mo.App.1980). It was never disputed that the policy in question included coverage for additional living expenses. The only issue was the extent to which, if any, plaintiff was entitled to reimbursement for living expenses.

■■■ Defendant's fifth point avers that the trial court erred in admitting plaintiff's testimony regarding expenses incurred in removing debris after the fire, the interest charged after the date of the loss on the outstanding mortgages and the value of a built-in stove and garbage disposal in the house at the time of the loss. After considering these issues we reject defendant's contentions.

We finally consider defendant's several remaining points all regarding the jury award of attorneys' fees for vexatious refusal to pay pursuant to § 375.296 and § 375.420, RSMo 1978. Defendant's sixth point contends the trial court erred in submitting the claim to the jury. The defendant argues that their refusal to pay was reasonable because plaintiff's claim presented an open question of law as to her insurable interest and substantial factual issues relevant to items allegedly contained in the dwelling on the date of the loss. We disagree.

■■■ The jury verdict will be sustained unless there is no substantial evidence to support it or it was against the weight of the evidence or it erroneously declares or applies the law. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980). To support the imposition of the penalty under the statute, plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. *Groves v. State Farm Mutual Auto Insurance Co.*, 540 S.W.2d 39, 42 (Mo. banc 1976).

■■■ The existence of a litigable issue, either factual or legal, does not pre-

clude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant. *Still v. Travelers Indemnity Co.*, 374 S.W.2d 95, 103 (Mo. 1963); *Kimpton v. Spellman*, 351 Mo. 674, 173 S.W.2d 886, 893 (1943); *Berry v. Federal Kemper Insurance Co.*, 621 S.W.2d 948, 953–54 (Mo.App.1981). Direct and specific evidence to show vexatious refusal is not required, the jury may find vexatious dely upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case. *Evans v. Great Northern Life Insurance Co.*, 237 Mo.App. 317, 167 S.W.2d 118, 125 (1942).

The plaintiff gave notice of the casualty and filed her claim on August 12, 1980, two days after the fire. This lawsuit was filed on February 18, 1981. However, the first and second mortgages were not paid by the insured until March 3, 1981 and April 30, 1981. The mortgage interests were contained in the mortgage clause which was made a part of the policy, any defense available to the insurance company against Betty DeWitt was not available against the mortgageholders. The district property manager responsible for the plaintiff's claim testified at trial that the delay in paying the first mortgagee was due to a "mistake" on his part. He further stated that he could not honestly explain why there was an additional nine week delay in paying the second mortgagee. The third mortgage, not shown on the face of the policy, was not paid prior to trial.

■■■ In addition to the delay or refusal to pay the mortgagees, the jury may have properly considered the insurer's failure to return the premiums paid, the adequacy of their investigation of the claim and finally the explanation given by the insurer for denying the claim. We conclude that there was substantial evidence upon which the jury could have found vexatious refusal to pay.[9]

---

9. *See Fohn v. Title Insurance Corp.*, 529 S.W.2d 1, 5–6 (Mo. banc 1975) (where the precise amount the insurance company is obligated to pay can not be determined, the refusal to pay may still be vexatious).

■ Seventh, defendant claims the court erred in submitting jury instructions no. 5 and 13. Both instructions were given by the court on its own motion and are not contained in MAI.

Instruction No. 13 is plaintiff's verdict director for vexatious refusal to pay damages and stated:

> If you find in favor of plaintiff, Betty M. DeWitt, on her claim for loss and you believe the conduct of the defendant in refusing to pay the loss was without reasonable cause or excuse, then in addition to the damages to which you find plaintiff entitled to for her loss, you may award plaintiff an additional amount as damages, not to exceed 20 percent of the first $1,500.00 of such loss and 10 percent of the amount of such loss in excess of $1,500.00 and a reasonable attorney's fee.

Instruction No. 13 parallels the language of § 375.420, RSMo 1978. "Where as here, there is no appropriate MAI instruction, the verdict directing instruction must follow the substantive law and be understandable." *National Super Markets, Inc. v. Shower*, 613 S.W.2d 154, 156 (Mo.App. 1981). We find that Instruction No. 13 does not misdirect, confuse or mislead the jury.

■ Instruction No. 5 was a definitional instruction and stated:

> The phrase 'reasonable cause' as used in these instructions means that degree of ordinary business care and prudence exercised by business men in general.

Defendant maintains the term "reasonable cause" is a term of ordinary understanding and should not have been defined at all. Defendant also complains that the instruction incorrectly defined "reasonable cause".[10] The decision to submit a definitional instruction is a matter within the sound discretion of the trial court and we find no error in giving one in the present case. *See James v. Turilli*, 473 S.W.2d 757, 762–63 (Mo.App.1971). Defendant fur-

ther complains that the instruction incorrectly states the law. The instruction uses the phrase "ordinary *business* care" and "prudence exercised by *businessmen* in general" (emphasis added). A reasonable person standard is appropriate under Missouri law. *See Hay v. Utica Mutual Insurance Co.*, 551 S.W.2d 954, 958 (Mo.App. 1977); *Duckworth v. United States Fidelity & Guaranty Co.*, 452 S.W.2d 280, 287 (Mo.App.1970). However, we find that the definition was substantially correct and when read in conjunction with the other instructions it was not prejudicial. *See Stahlheber v. American Cyanamid Co.*, 451 S.W.2d 48, 62 (Mo.1970); *Smith v. Stanolind Pipe Line Co.*, 354 Mo. 250, 189 S.W.2d 244, 252 (1945).

■ Defendant's last point contest the awarding of attorneys' fees without an award of percentage damages under § 375.420 and the evidentiary basis upon which the jury determined the amount of attorneys' fees. Without directly deciding on the propriety of the issue, numerous cases have allowed the imposition of attorney fees without an additional award of damages. *See e.g., Duckworth v. United States Fidelity & Guaranty Co.*, 452 S.W.2d at 287 (Mo.App.1970) (award reversed on appeal because no vexatious refusal); *Willis v. American National Life Insurance Co.*, 287 S.W.2d 98, 100 (Mo. App.1956); *Evans v. Great Northern Life Insurance Co.*, 237 Mo.App. 317, 330, 167 S.W.2d 118, 125 (1942). We note that "[t]his statute on its face is permissive, not mandatory. The question of whether any penalty will be awarded, and if so, how much, is a matter of pure discretion." *Morris v. Reed*, 510 S.W.2d 234, 242 (Mo. App.1974). We conclude that the award of attorneys fees alone is not improper. We also find sufficient evidence in the record to support the jury's award in this case.

The judgment of the trial court is affirmed.

---

**10.** Defendant notes that Instruction No. 13 uses the term "reasonable cause or excuse". We believe the decision of the trial court to only define "reasonable cause" was within its discretion.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and BLACKMAR, JJ., concur.

DONNELLY, J., concurs in part and dissents in part in separate opinion filed.

DONNELLY, Judge, concurring in part and dissenting in part.

In this particular case the insurer's refusal to pay the loss prior to litigation was reasonable as a matter of law.

I respectfully dissent as to the award of attorneys' fees.