649 F.Supp. 22 (1986)
Johnie BROWN, Plaintiff,
v.
J.C. PENNEY CASUALTY COMPANY, Defendant.
No. 86-728C(B).
United States District Court, E.D. Missouri, E.D.
October 22, 1986.
Donald Nangle, St. Louis, Mo., for plaintiff.
James Childress, Holtkamp, Beckemeier, Liese & Hummel, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
REGAN, District Judge.
By this Court-tried case, Johnie Brown seeks to recover the proceeds of a Homeowners policy of insurance issued by defendant covering a one story and basement residence building at 4320 Farlin, St. Louis, Missouri, and the contents therein.
Unquestionably, at the time the policy was issued, on May 7, 1984, Johnie Brown was the owner of the Farlin property, and *23 as such had an insurable interest. However, a preliminary question, a negative answer to which is dispositive of the claim for the building, is whether plaintiff had an insurable interest at the time of the loss. The applicable principle is stated by the Missouri Supreme Court en banc in De Witt v. American Family Mut. Ins. Co., 667 S.W.2d 700 (Mo. banc 1984) as follows:
"As a prerequisite to the enforcement of an insurance contract, public policy demands that the insured have an insurable interest in property both at the time of making the contract and at the time of the loss (citing cases). The requirement of insurable interest is necessary to prevent wagering under the guise of insurance and temptation to destroy the insured property." To the same effect is Faygal v. Shelter Ins. Co., 689 S.W.2d 724 (Mo.App.1985), further holding, inter alia, that "any actions or omissions by defendant cannot waive a public policy requirement that an insurable interest exist."
"A person has an insurable interest in property if [he] will derive pecuniary benefit or advantage from its preservation or will suffer pecuniary loss or damage from its destruction, termination or injury by the happening of the event insured against ... The issue is not what is the insured's title to the property, but rather, would [he] suffer pecuniary damage by the loss." De Witt, supra, at 705. Applying the foregoing principle to the facts of this case, we hold that Johnie Brown did not have an insurable interest in the Farlin property on November 30, 1985, the date of the loss.
Johnie Brown purchased the Farlin property in 1977. He allowed the real estate taxes for the years 1978, 1979, 1980 and 1981 to become delinquent. The Collector of Revenue of St. Louis filed suit to foreclose the delinquent taxes under the provisions of the Municipal Land Reutilization Law of Missouri (Sections 92.700 to 92.920 R.S.Mo.), and obtained judgment of foreclosure on February 17, 1984. The statute provides for a right of redemption within six months prior to the time of the foreclosure sale. It also provides that at any time prior to the time of the foreclosure sale, the collector may enter into a written redemption contract with an interested party for installment payment of the delinquent tax bills together with interest, penalties, attorneys fees and costs. Pursuant to that authority, the Collector entered into such a redemption contract with Johnie Brown with the provision therein (as required by the statute) that if any installment is not paid when due the real estate "shall forthwith be advertised for sale or included in the next Notice of Sheriff's Foreclosure Sale." Johnie Brown defaulted in making the installment payments and the property was duly advertised for sale, and subsequently it was sold on November 13, 1984, to the highest bidder for the sum of $2005, which was, as required by the statute, paid in cash immediately on the same day. "Such sale shall convey the whole interest of every person having or claiming any right, title or interest in or lien upon such real estate." Section 92.825 R.S.Mo. However, the sheriff's deed conveying the title is not delivered to the purchaser until the sale is confirmed by the Court. The sole purpose of the confirmation hearing is to determine whether an adequate consideration had been paid for the property. If the Court finds that the consideration is adequate, the sale is confirmed. If it is found to be inadequate, the purchaser may increase his bid to the amount found by the Court to be adequate. In the instant case, the consideration paid was found to be adequate and a deed was issued to the purchaser on February 20, 1985.
Summarizing, the foreclosure sale on November 13, 1984 conveyed the entire interest of Johnie Brown in the property and terminated his right of redemption. The fire loss occurred 17 days later, on November 30, 1984. On that date Johnie Brown no longer had an insurable or other interest in the property. Having theretofore lost all legal and equitable interest in the property, including his pre-existing right of redemption, he suffered no financial damage by reason of the loss of the *24 building, so that he is not entitled to recover on the policy for that loss.
The foregoing ruling would be dispositive of this case, but for the fact the policy also provides coverage for loss of contents as to which (except as to property belonging to his daughter) Johnie Brown had an insurable interest. However, applicable to his claim is the defense of arson by or with his complicity.
"It is firmly settled in Missouri that in a civil action on an insurance policy, the defense of arson by the insured need be established by a preponderance of the evidence and not beyond all reasonable doubt, and it may be established by circumstantial evidence." Miele v. Boston Insurance Company, 288 F.2d 178, 180. Hence, the fact plaintiff was not prosecuted is irrelevant.
We are convinced and so find, that the fire was of incendiary origin. As described by defendant's expert (who has investigated hundreds of fires), it was "unusual", in that there were actually three separate fires, one in the kitchen and two in the basement, with no continuity between them. There were indications of a flammable substance such as kerosene having been used. Little purpose would be served by detailing the particulars noted by the expert which are consistent with the incendiary nature of the fire.
We next review the sufficiency of the evidence (entirely circumstantial) to permit a finding of Johnie Brown's responsibility for the fire. Preliminarily, we note that although he had purchased the property in September, 1977 from the Veterans Administration for $1,500 and claims to have expended over a period of time his personal labor and materials of an estimated value of $7,000 in improving the building, he carried no insurance whatever on the building from 1977 until May, 1984 (six months before the fire) when he obtained the Homeowners policy in suit which provided coverage of $44,000 for the building and $22,000 for the personal property therein.[1]
Unquestionably, Brown was aware at the time he obtained the insurance in May, 1984 not only that the real estate taxes for the years 1978, 1979, 1980 and 1981 (and inferentially, for the years 1982 and 1983) were in default, but also that a tax foreclosure suit for 1978, 1979, 1980 and 1981 had theretofore been filed and judgment entered.
In December, 1982, a year and a half before the fire, in order to forestall a foreclosure sale after the waiting period following judgment, Brown entered into a redemption contract with the City Collector of Revenue (as authorized by the Municipal Land Reutilization Law of Missouri). By that contract, Brown agreed to pay the delinquencies in bimonthly installments in consideration of which he could redeem the property from the taxes in judgment (without affecting his continued liability for the taxes for the years 1982 and 1983, not yet in suit). Brown made three such bimonthly payments, the last of which was more than a year before he obtained the insurance.
Brown has not explained why he stopped making the agreed payments, particularly in light of the fact that such failure could result (as it did) in the loss of any right of redemption. We note that the redemption contract explicitly provides (as does the statute) that in the event of default in making the agreed installment payments, the property could be sold without further notice[2] (and that is what happened).
With the foregoing background, we examine the movements of Brown on the *25 night of the fire as testified to by him, without corroboration. The fire was discovered by police who observed smoke coming from the building at 4 A.M. Brown, a teetotaler, testified he left the premises about 9 or 9:30 P.M. to go "bar hopping" and did not return until 4 A.M. After "visiting" with acquaintances at the first bar for about two hours, he then went to a second bar at which he stayed until about 12:30 or 1 a.m. visiting with "friends" whose names he does not know. His next and last stop was at a White Castle for something to eat. He offered no explanation as to why it would take about three hours to eat one or more hamburgers or why he was apparently so reluctant to return home. Obviously, he had ample time to set the fires, leave, and then put in an appearance about the time the police and firemen arrived.
There is no other explanation for the fire. Brown does not claim he had any enemies or that any one other than Johnie Brown could have had a possible motive for setting the fire. Both the front and back doors were locked and there was no sign of forced entry. There is no evidence that the wiring and appliances were other than in good condition or even that the three disconnected fires and the nature of the damage could have been caused by defective wiring or appliances.
We find on the basis of the preponderance of the entire circumstantial evidence that the fire was set by Johnie Brown, so that in addition to his lack of insurable interest, he is in any event precluded from recovery on the policy. That as of and prior to November 30, 1984, Johnie Brown may well have been and probably was actually unaware that the property would be and was sold on November 13, 1984 pursuant to the judgment of foreclosure serves to explain why the fire was not set several weeks earlier.
Accordingly, judgment will be entered in favor of defendant and against plaintiff. The foregoing Memorandum constitutes our findings of fact and conclusions of law.
NOTES
[1] There is no evidence as to how plaintiff determined upon a valuation of $44,000 for the building when he took out the insurance. However, whatever its actual value, defendant is precluded by the Missouri Valued Policy Law from questioning the value on a bona fide loss.
[2] Also as affecting his financial situation, Brown gave a statement on December 3, three days after the fire, that he was "behind" on a $3,000 bank loan "on his house." Although at the trial, more than a year later, he testified, without corroboration or explanation, that he was current in his bank loan payments, we credit the December 3 statement.